(Slip Opinion) OCTOBER TERM, 2011 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MAPLES *v.* THOMAS, COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 10–63.   Argued October 4, 2011—January 18, 2012

Petitioner Cory R. Maples was found guilty of murder and sentenced to death in Alabama state court. In 2001, Maples sought postconviction relief in state court under Alabama Rule 32. Maples alleged, among other things, that his underpaid and inexperienced trial attorneys failed to afford him the effective assistance guaranteed by the Sixth Amendment. His petition was written by two *pro bono* attorneys, Jaasai Munanka and Clara Ingen-Housz, both associated with the New York offices of the Sullivan & Cromwell law firm. As required by Alabama law, the two attorneys engaged an Alabama lawyer, John Butler, to move their admission *pro hac vice.* Butler made clear, however, that he would undertake no substantive involvement in the case.

   In 2002, while Maples' state postconviction petition was pending, Munanka and Ingen-Housz left Sullivan & Cromwell. Their new employment disabled them from representing Maples. They did not inform Maples of their departure and consequent inability to serve as his counsel. In disregard of Alabama law, neither sought the trial court's leave to withdraw. No other Sullivan & Cromwell attorney entered an appearance, moved to substitute counsel, or otherwise notified the court of a change in Maples' representation. Thus, Munanka, Ingen-Housz, and Butler remained Maples' listed, and only, attorneys of record.

   The trial court denied Maples' petition in May 2003. Notices of the order were posted to Munanka and Ingen-Housz at Sullivan & Cromwell's address. When those postings were returned, unopened, the trial court clerk attempted no further mailing. Butler also received a copy of the order, but did not act on it. With no attorney of

record in fact acting on Maples' behalf, the 42-day period Maples had to file a notice of appeal ran out.

About a month later, an Alabama Assistant Attorney General sent a letter directly to Maples. The letter informed Maples of the missed deadline and notified him that he had four weeks remaining to file a federal habeas petition. Maples immediately contacted his mother, who called Sullivan & Cromwell. Three Sullivan & Cromwell attorneys, through Butler, moved the trial court to reissue its order, thereby restarting the 42-day appeal period. The court denied the motion. The Alabama Court of Criminal Appeals then denied a writ of mandamus that would have granted Maples leave to file an out-of-time appeal, and the State Supreme Court affirmed.

Thereafter, Maples sought federal habeas relief. Both the District Court and the Eleventh Circuit denied his request, pointing to the procedural default in state court, *i.e.*, Maples' failure timely to appeal the state trial court's order denying his Rule 32 petition for postconviction relief.

*Held:* Maples has shown the requisite "cause" to excuse his procedural default. Pp. 11–22.

(a) As a rule, a federal court may not entertain a state prisoner's habeas claims "when (1) 'a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.'" *Walker* v. *Martin*, 562 U. S. ___, ___. The bar to federal review may be lifted, however, if "the prisoner can demonstrate cause for the [procedural] default [in state court] and actual prejudice as a result of the alleged violation of federal law." *Coleman* v. *Thompson*, 501 U. S. 722, 750.

Cause for a procedural default exists where "something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . 'impeded [his] efforts to comply with the State's procedural rule.'" *Id.,* at 753. A prisoner's postconviction attorney's negligence does not qualify as "cause," *ibid.,* because the attorney is the prisoner's agent, and under "well-settled" agency law, the principal bears the risk of his agent's negligent conduct, *id.,* at 753–754. Thus, a petitioner is bound by his attorney's failure to meet a filing deadline and cannot rely on that failure to establish cause. *Ibid.*

A markedly different situation arises, however, when an attorney abandons his client without notice, and thereby occasions the default. In such cases, the principal-agent relationship is severed and the attorney's acts or omissions "cannot fairly be attributed to [the client]." *Id.,* at 753. Nor can the client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him.

Syllabus

*Holland* v. *Florida*, 560 U. S. ___, is instructive. There, the Court found that the one-year deadline for filing a federal habeas petition can be tolled for equitable reasons, and that an attorney's unprofessional conduct may sometimes be an "extraordinary circumstance" justifying equitable tolling. *Id.*, at ___, ___–___. The Court recognized that an attorney's negligence does not provide a basis for tolling a statutory time limit. *Id.,* at ___. Holland's claim that he was abandoned by his attorney, however, if true, "would suffice to establish extraordinary circumstances beyond his control," *id.,* at ___ (opinion of ALITO, J.). Pp. 11–15.

   (b) From the time of his initial Rule 32 petition until well after time ran out for appealing the trial court's denial of that petition, Maples' sole attorneys of record were Munanka, Ingen-Housz, and Butler. Unknown to Maples, none of those lawyers was in fact serving as his attorney during the 42-day appeal period. Pp. 15–21.

     (1) The State contends that Sullivan & Cromwell represented Maples throughout his state postconviction proceedings, and that, as a result, Maples cannot establish abandonment by counsel during the 42-day period. But it is undisputed that Munanka and Ingen-Housz severed their agency relationship with Maples long before the default occurred. Furthermore, because the attorneys did not seek the trial court's permission to withdraw, they allowed court records to convey that they remained the attorneys of record. As such, the attorneys, not Maples, would be the addressees of court orders Alabama law requires the clerk to furnish.

   The State asserts that, after Munanka's and Ingen-Housz's departure, other Sullivan & Cromwell attorneys came forward to serve as Maples' counsel. At the time of the default, however, those attorneys had not been admitted to practice in Alabama, had not entered their appearances on Maples' behalf, and had done nothing to inform the Alabama court that they wished to substitute for Munanka and Ingen-Housz. Thus, they lacked the legal authority to act on Maples' behalf before his time to appeal expired. Pp. 15–19.

     (2) Maples' only other attorney of record, local counsel Butler, did not even begin to represent Maples. Butler told Munanka and Ingen-Housz that he would serve as local counsel only for the purpose of enabling them to appear *pro hac vice* and would play no substantive role in the case. Other factors confirm that Butler was not Maples' "agent in any meaningful sense of that word." *Holland*, 560 U. S., at ___ (opinion of ALITO, J.). Upon receiving a copy of the trial court's order, Butler did not contact Sullivan & Cromwell to ensure that firm lawyers were taking appropriate action. Nor did the State treat Butler as Maples' actual representative. Notably, the Alabama Assistant Attorney General wrote directly and only to Maples, notwithstanding

an ethical obligation to refrain from communicating directly with an opposing party known to be represented by counsel. Pp. 19–20.

    (3) Not only was Maples left without any functioning attorney of record; the very listing of Munanka, Ingen-Housz, and Butler as his representatives meant that he had no right personally to receive notice. He in fact received none within the 42 days allowed for commencing an appeal. Given no reason to suspect that he lacked counsel able and willing to represent him, Maples surely was blocked from complying with the State's procedural rule. Pp. 20–21.

    (c) "The cause and prejudice requirement shows due regard for States' finality and comity interests while ensuring that 'fundamental fairness [remains] the central concern of the writ of habeas corpus.'" *Dretke* v. *Haley*, 541 U. S. 386, 393. In the unusual circumstances of this case, agency law principles and fundamental fairness point to the same conclusion: there was indeed cause to excuse Maples' procedural default. Through no fault of his own, he lacked the assistance of any authorized attorney during the 42-day appeal period. And he had no reason to suspect that, in reality, he had been reduced to *pro se* status. Pp. 21–22.

    (d) The question of prejudice, which neither the District Court nor the Eleventh Circuit reached, remains open for decision on remand. P. 22.

586 F. 3d 879, reversed and remanded.

    GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, BREYER, ALITO, SOTOMAYOR, and KAGAN, JJ., joined. ALITO, J., filed a concurring opinion. SCALIA, J., filed a dissenting opinion, in which THOMAS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 10–63

———————

## CORY R. MAPLES, PETITIONER *v.* KIM T. THOMAS, COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[January 18, 2012]

JUSTICE GINSBURG delivered the opinion of the Court.

Cory R. Maples is an Alabama capital prisoner sentenced to death in 1997 for the murder of two individuals. At trial, he was represented by two appointed lawyers, minimally paid and with scant experience in capital cases. Maples sought postconviction relief in state court, alleging ineffective assistance of counsel and several other trial infirmities. His petition, filed in August 2001, was written by two New York attorneys serving *pro bono*, both associated with the same New York-based large law firm. An Alabama attorney, designated as local counsel, moved the admission of the out-of-state counsel *pro hac vice*. As understood by New York counsel, local counsel would facilitate their appearance, but would undertake no substantive involvement in the case.

In the summer of 2002, while Maples' postconviction petition remained pending in the Alabama trial court, his New York attorneys left the law firm; their new employment disabled them from continuing to represent Maples. They did not inform Maples of their departure and conse-

quent inability to serve as his counsel. Nor did they seek the Alabama trial court's leave to withdraw. Neither they nor anyone else moved for the substitution of counsel able to handle Maples' case.

In May 2003, the Alabama trial court denied Maples' petition. Notices of the court's order were posted to the New York attorneys at the address of the law firm with which they had been associated. Those postings were returned, unopened, to the trial court clerk, who attempted no further mailing. With no attorney of record in fact acting on Maples' behalf, the time to appeal ran out.

Thereafter, Maples petitioned for a writ of habeas corpus in federal court. The District Court and, in turn, the Eleventh Circuit, rejected his petition, pointing to the procedural default in state court, *i.e.*, Maples' failure timely to appeal the Alabama trial court's order denying him postconviction relief. Maples, it is uncontested, was blameless for the default.

The sole question this Court has taken up for review is whether, on the extraordinary facts of Maples' case, there is "cause" to excuse the default. Maples maintains that there is, for the lawyers he believed to be vigilantly representing him had abandoned the case without leave of court, without informing Maples they could no longer represent him, and without securing any recorded substitution of counsel. We agree. Abandoned by counsel, Maples was left unrepresented at a critical time for his state postconviction petition, and he lacked a clue of any need to protect himself *pro se*. In these circumstances, no just system would lay the default at Maples' death-cell door. Satisfied that the requisite cause has been shown, we reverse the Eleventh Circuit's judgment.

## I

## A

Alabama sets low eligibility requirements for lawyers

appointed to represent indigent capital defendants at trial. American Bar Association, Evaluating Fairness and Accuracy in State Death Penalty Systems: The Alabama Death Penalty Assessment Report 117–120 (June 2006) (hereinafter ABA Report); Brief for Alabama Appellate Court Justices et al. as *Amici Curiae* 7–8 (hereinafter Justices Brief). Appointed counsel need only be a member of the Alabama bar and have "five years' prior experience in the active practice of criminal law." Ala. Code §13A–5–54 (2006). Experience with capital cases is not required. Justices Brief 7–8. Nor does the State provide, or require appointed counsel to gain, any capital-case-specific professional education or training. ABA Report 129–131; Justices Brief 14–16.

Appointed counsel in death penalty cases are also undercompensated. ABA Report 124–129; Justices Brief 12–14. Until 1999, the State paid appointed capital defense attorneys just "$40.00 per hour for time expended in court and $20.00 per hour for time reasonably expended out of court in the preparation of [the defendant's] case." Ala. Code §15–12–21(d) (1995). Although death penalty litigation is plainly time intensive,[1] the State capped at $1,000 fees recoverable by capital defense attorneys for out-of-court work. *Ibid.*[2] Even today, court-appointed attorneys receive only $70 per hour. 2011 Ala. Acts no. 2011–678, pp. 1072–1073, §6.

——————

[1] One study of federal capital trials from 1990 to 1997 found that defense attorneys spent an average of 1,480 out-of-court hours preparing a defendant's case. Subcommittee on Federal Death Penalty Cases, Committee on Defender Services, Judicial Conference of the United States, Federal Death Penalty Cases: Recommendations Concerning the Cost and Quality of Defense Representation 14 (May 1998).

[2] In 1999, the State removed the cap on fees for out-of-court work in capital cases. Ala. Code §15–12–21(d) (2010 Cum. Supp.). Perhaps not coincidentally, 70% of the inmates on Alabama's death row in 2006, including Maples, had been convicted when the $1,000 cap was in effect. ABA Report 126.

Nearly alone among the States, Alabama does not guarantee representation to indigent capital defendants in postconviction proceedings. ABA Report 111–112, 158–160; Justices Brief 33. The State has elected, instead, "to rely on the efforts of typically well-funded [out-of-state] volunteers." Brief in Opposition in *Barbour* v. *Allen*, O. T. 2006, No. 06–10605, p. 23. Thus, as of 2006, 86% of the attorneys representing Alabama's death row inmates in state collateral review proceedings "either worked for the Equal Justice Initiative (headed by NYU Law professor Bryan Stevenson), out-of-state public interest groups like the Innocence Project, or an out-of-state mega-firm." Brief in Opposition 16, n. 4. On occasion, some prisoners sentenced to death receive no postconviction representation at all. See ABA Report 112 ("[A]s of April 2006, approximately fifteen of Alabama's death row inmates in the final rounds of state appeals had no lawyer to represent them.").

B

This system was in place when, in 1997, Alabama charged Maples with two counts of capital murder; the victims, Stacy Alan Terry and Barry Dewayne Robinson II, were Maples' friends who, on the night of the murders, had been out on the town with him. Maples pleaded not guilty, and his case proceeded to trial, where he was represented by two court-appointed Alabama attorneys. Only one of them had earlier served in a capital case. See Tr. 3081. Neither counsel had previously tried the penalty phase of a capital case. Compensation for each lawyer was capped at $1,000 for time spent out-of-court preparing Maples' case, and at $40 per hour for in-court services. See Ala. Code §15–12–21 (1995).

Finding Maples guilty on both counts, the jury recommended that he be sentenced to death. The vote was 10 to 2, the minimum number Alabama requires for a death

recommendation. See Ala. Code §13A–5–46(f) (1994) ("The decision of the jury to recommend a sentence of death must be based on a vote of at least 10 jurors."). Accepting the jury's recommendation, the trial court sentenced Maples to death. On direct appeal, the Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed the convictions and sentence. *Ex parte Maples*, 758 So. 2d 81 (Ala. 1999); *Maples* v. *State*, 758 So. 2d 1 (Ala. Crim. App. 1999). We denied certiorari. *Maples* v. *Alabama*, 531 U. S. 830 (2000).

Two out-of-state volunteers represented Maples in postconviction proceedings: Jaasi Munanka and Clara Ingen-Housz, both associates at the New York offices of the Sullivan & Cromwell law firm. At the time, Alabama required out-of-state attorneys to associate local counsel when seeking admission to practice *pro hac vice* before an Alabama court, regardless of the nature of the proceeding. Rule Governing Admission to the Ala. State Bar VII (2000) (hereinafter Rule VII).[3] The Alabama Rule further prescribed that the local attorney's name "appear on all notices, orders, pleadings, and other documents filed in the cause," and that local counsel "accept joint and several responsibility with the foreign attorney to the client, to opposing parties and counsel, and to the court or administrative agency in all matters [relating to the case]." Rule VII(C).

Munanka and Ingen-Housz associated Huntsville, Alabama attorney John Butler as local counsel. Notwithstanding his obligations under Alabama law, Butler informed Munanka and Ingen-Housz, "at the outset," that he would serve as local counsel only for the purpose of

_____

[3] In 2006, Alabama revised Rule VII. See Rule Governing Admission to the Ala. State Bar VII (2009). Under the new rule, the State allows out-of-state counsel to represent *pro bono* indigent criminal defendants in postconviction proceedings without involvement of local counsel. *Ibid.*

allowing the two New York attorneys to appear *pro hac vice* on behalf of Maples. App. to Pet. for Cert. 255a. Given his lack of "resources, available time [and] experience," Butler told the Sullivan & Cromwell lawyers, he could not "deal with substantive issues in the case." *Ibid.* The Sullivan & Cromwell attorneys accepted Butler's conditions. *Id.,* at 257a. This arrangement between out-of-state and local attorneys, it appears, was hardly atypical. See Justices Brief 36 ("The fact is that local counsel for out-of-state attorneys in post-conviction litigation most often do nothing other than provide the mechanism for foreign attorneys to be admitted.").

With the aid of his *pro bono* counsel, Maples filed a petition for postconviction relief under Alabama Rule of Criminal Procedure 32.[4] Among other claims, Maples asserted that his court-appointed attorneys provided constitutionally ineffective assistance during both guilt and penalty phases of his capital trial. App. 29–126. He alleged, in this regard, that his inexperienced and under-funded attorneys failed to develop and raise an obvious intoxication defense, did not object to several egregious instances of prosecutorial misconduct, and woefully un-derprepared for the penalty phase of his trial. The State responded by moving for summary dismissal of Maples' petition. On December 27, 2001, the trial court denied the State's motion.

Some seven months later, in the summer of 2002, both Munanka and Ingen-Housz left Sullivan & Cromwell. App. to Pet. for Cert. 258a. Munanka gained a clerkship with a federal judge; Ingen-Housz accepted a position with the European Commission in Belgium. *Ibid.* Neither attorney told Maples of their departure from Sullivan & Cromwell or of their resulting inability to continue to

––––––––––

[4] Originally filed in August 2001, the petition was resubmitted, with only minor alterations, in December 2001. See App. 22–24, 28–142.

represent him. In disregard of Alabama law, see Ala. Rule Crim. Proc. 6.2, Comment, neither attorney sought the trial court's leave to withdraw, App. to Pet. for Cert. 223a. Compounding Munanka's and Ingen-Housz's inaction, no other Sullivan & Cromwell lawyer entered an appearance on Maples' behalf, moved to substitute counsel, or otherwise notified the court of any change in Maples' representation. *Ibid.*

Another nine months passed. During this time period, no Sullivan & Cromwell attorneys assigned to Maples' case sought admission to the Alabama bar, entered appearances on Maples' behalf, or otherwise advised the Alabama court that Munanka and Ingen-Housz were no longer Maples' attorneys. Thus, Munanka and Ingen-Housz (along with Butler) remained Maples' listed, and only, "attorneys of record." *Id.,* at 223a.

There things stood when, in May 2003, the trial court, without holding a hearing, entered an order denying Maples' Rule 32 petition. App. 146–225.[5] The clerk of the Alabama trial court mailed copies of the order to Maples' three attorneys of record. He sent Munanka's and Ingen-Housz's copies to Sullivan & Cromwell's New York address, which the pair had provided upon entering their appearances.

When those copies arrived at Sullivan & Cromwell, Munanka and Ingen-Housz had long since departed. The notices, however, were not forwarded to another Sullivan & Cromwell attorney. Instead, a mailroom employee sent the unopened envelopes back to the court. "Returned to Sender—Attempted, Unknown" was stamped on the envelope addressed to Munanka. App. to Reply to Brief in

––––––––––

[5] One of Maples' attorneys observed, without contradiction, that the trial court's order was a "word for word copy of the proposed Order that the State had submitted [with] its [December 2001] Motion to Dismiss." *Id.,* at 300.

Opposition 8a. A similar stamp appeared on the envelope addressed to Ingen-Housz, along with the handwritten notation "Return to Sender—Left Firm." *Id.,* at 7a.

Upon receiving back the unopened envelopes he had mailed to Munanka and Ingen-Housz, the Alabama court clerk took no further action. In particular, the clerk did not contact Munanka or Ingen-Housz at the personal telephone numbers or home addresses they had provided in their *pro hac vice* applications. See Ingen-Housz Verified Application for Admission to Practice Under Rule VII, p. 1; and Munanka Verified Application for Admission to Practice Under Rule VII, p. 1, in *Maples* v. *State*, No. CC–95–842.60 (C. C. Morgan Cty., Ala.). Nor did the clerk alert Sullivan & Cromwell or Butler. Butler received his copy of the order, but did not act on it. App. to Pet. for Cert. 256a. He assumed that Munanka and Ingen-Housz, who had been "CC'd" on the order, would take care of filing an appeal. *Ibid.*

Meanwhile, the clock ticked on Maples' appeal. Under Alabama's Rules of Appellate Procedure, Maples had 42 days to file a notice of appeal from the trial court's May 22, 2003 order denying Maples' petition for postconviction relief. Rule 4(a)(1) (2000). No appeal notice was filed, and the time allowed for filing expired on July 7, 2003.

A little over a month later, on August 13, 2003, Alabama Assistant Attorney General Jon Hayden, the attorney representing the State in Maples' collateral review proceedings, sent a letter directly to Maples. App. to Pet. for Cert. 253a–254a. Hayden's letter informed Maples of the missed deadline for initiating an appeal within the State's system, and notified him that four weeks remained during which he could file a federal habeas petition. *Ibid.* Hayden mailed the letter to Maples only, using his prison address. *Ibid.* No copy was sent to Maples' attorneys of record, or to anyone else acting on Maples' behalf. *Ibid.*

Upon receiving the State's letter, Maples immediately

contacted his mother. *Id.,* at 258a. She telephoned Sullivan & Cromwell to inquire about her son's case. *Ibid.* Prompted by her call, Sullivan & Cromwell attorneys Marc De Leeuw, Felice Duffy, and Kathy Brewer submitted a motion, through Butler, asking the trial court to reissue its order denying Maples' Rule 32 petition, thereby restarting the 42-day appeal period. *Id.,* at 222a.

The trial court denied the motion, *id.,* at 222a–225a, noting that Munanka and Ingen-Housz had not withdrawn from the case and, consequently, were "still attorneys of record for the petitioner," *id.,* at 223a. Furthermore, the court added, attorneys De Leeuw, Duffy, and Brewer had not "yet been admitted to practice in Alabama" or "entered appearances as attorneys of record." *Ibid.* "How," the court asked, "can a Circuit Clerk in Decatur, Alabama know what is going on in a law firm in New York, New York?" *Id.,* at 223a–224a. Declining to blame the clerk for the missed notice of appeal deadline, the court said it was "unwilling to enter into subterfuge in order to gloss over mistakes made by counsel for the petitioner." *Ibid.*

Maples next petitioned the Alabama Court of Criminal Appeals for a writ of mandamus, granting him leave to file an out-of-time appeal. Rejecting Maples' plea, the Court of Criminal Appeals determined that, although the clerk had "assumed a duty to notify the parties of the resolution of Maples's Rule 32 petition," the clerk had satisfied that obligation by sending notices to the attorneys of record at the addresses those attorneys provided. *Id.,* at 234a–235a. Butler's receipt of the order, the court observed, sufficed to notify all attorneys "in light of their apparent co-counsel status." *Id.,* at 235a–236a (quoting *Thomas* v. *Kellett*, 489 So. 2d 554, 555 (Ala. 1986)). The Alabama Supreme Court summarily affirmed the Court of Criminal Appeals' judgment, App. to Pet. for Cert. 237a, and this Court denied certiorari, *Maples* v. *Alabama*, 543 U. S. 1148 (2005).

Having exhausted his state postconviction remedies, Maples sought federal habeas corpus relief. Addressing the ineffective-assistance-of-trial-counsel claims Maples stated in his federal petition, the State urged that Maples had forever forfeited those claims. Maples did, indeed, present the claims in his state postconviction (Rule 32) petition, the State observed, but he did not timely appeal from the trial court's denial of his petition. That procedural default, the State maintained, precluded federal-court consideration of the claims.[6] Maples replied that the default should be excused, because he missed the appeal deadline "through no fault of his own." App. 262 (internal quotation marks omitted).

The District Court determined that Maples had defaulted his ineffective-assistance claims, and that he had not shown "cause" sufficient to overcome the default. App. to Pet. for Cert. 49a–55a. The court understood Maples to argue that errors committed by his postconviction counsel, not any lapse on the part of the court clerk in Alabama, provided the requisite "cause" to excuse his failure to meet Alabama's 42-days-to-appeal Rule. *Id.,* at 55a. Such an argument was inadmissible, the court ruled, because this Court, in *Coleman* v. *Thompson*, 501 U. S. 722 (1991), had held that the ineffectiveness of postconviction appellate counsel could not qualify as cause. App. to Pet. for Cert. 55a (citing *Coleman*, 501 U. S., at 751).

A divided panel of the Eleventh Circuit affirmed. *Maples* v. *Allen*, 586 F. 3d 879 (2009) *(per curiam).* In accord with the District Court, the Court of Appeals' majority held that Maples defaulted his ineffective-assistance

_____

[6] In opposing Maples' request for an out-of-time appeal, the State argued to the Alabama Supreme Court that such an appeal was unwarranted. In that context, the State noted that Maples "may still present his postconviction claims to [the federal habeas] court." 35 Record, Doc. No. 55, p. 22, n. 4. The State's current position is in some tension with that observation.

claims in state court by failing to file a timely notice of appeal, *id.,* at 890, and that *Coleman* rendered Maples' assertion of "cause" unacceptable, 586 F. 3d, at 891.

Judge Barkett dissented. *Id.,* at 895–898. She concluded that the Alabama Court of Criminal Appeals had acted "arbitrarily" in refusing to grant Maples' request for an out-of-time appeal. *Id.,* at 896. In a case involving "indistinguishable facts," Judge Barkett noted, the Alabama appellate court had allowed the petitioner to file a late appeal. *Ibid.* (citing *Marshall* v. *State*, 884 So. 2d 898, 899 (Ala. Crim. App. 2002)). Inconsistent application of the 42-days-to-appeal rule, Judge Barkett said, "render[ed] the rule an inadequate ground on which to bar federal review of Maples's claims." 586 F. 3d, at 897. The interests of justice, she added, required review of Maples' claims in view of the exceptional circumstances and high stakes involved, and the absence of any fault on Maples' part. *Ibid.*

We granted certiorari to decide whether the uncommon facts presented here establish cause adequate to excuse Maples' procedural default. 562 U. S. \_\_\_ (2011).

## II
## A

As a rule, a state prisoner's habeas claims may not be entertained by a federal court "when (1) 'a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.'" *Walker* v. *Martin*, 562 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 7) (quoting *Coleman*, 501 U. S., at 729–730). The bar to federal review may be lifted, however, if "the prisoner can demonstrate cause for the [procedural] default [in state court] and actual prejudice as a result of the alleged violation of federal law." *Id.*, at 750; see *Wainwright* v. *Sykes*, 433 U. S. 72, 84–85

(1977).

Given the single issue on which we granted review, we will assume, for purposes of this decision, that the Alabama Court of Criminal Appeals' refusal to consider Maples' ineffective-assistance claims rested on an independent and adequate state procedural ground: namely, Maples' failure to satisfy Alabama's Rule requiring a notice of appeal to be filed within 42 days from the trial court's final order.  Accordingly, we confine our consideration to the question whether Maples has shown cause to excuse the missed notice of appeal deadline.

Cause for a procedural default exists where "something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . 'impeded [his] efforts to comply with the State's procedural rule.'"  *Coleman*, 501 U. S., at 753 (quoting *Murray* v. *Carrier*, 477 U. S. 478, 488 (1986); emphasis in original).  Negligence on the part of a prisoner's postconviction attorney does not qualify as "cause."  *Coleman*, 501 U. S., at 753.  That is so, we reasoned in *Coleman*, because the attorney is the prisoner's agent, and under "well-settled principles of agency law," the principal bears the risk of negligent conduct on the part of his agent.  *Id.,* at 753–754.  See also *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 92 (1990) ("Under our system of representative litigation, 'each party is deemed bound by the acts of his lawyer-agent.'" (quoting *Link* v. *Wabash R. Co.*, 370 U. S. 626, 634 (1962))).  Thus, when a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause.  *Coleman*, 501 U. S., at 753–754.  We do not disturb that general rule.

A markedly different situation is presented, however, when an attorney abandons his client without notice, and thereby occasions the default.  Having severed the principal-agent relationship, an attorney no longer acts, or fails to act, as the client's representative.  See 1 Restatement

(Third) of Law Governing Lawyers §31, Comment *f* (1998) ("Withdrawal, whether proper or improper, terminates the lawyer's authority to act for the client."). His acts or omissions therefore "cannot fairly be attributed to [the client]." *Coleman*, 501 U. S., at 753. See, *e.g., Jamison* v. *Lockhart*, 975 F. 2d 1377, 1380 (CA8 1992) (attorney conduct may provide cause to excuse a state procedural default where, as a result of a conflict of interest, the attorney "ceased to be [petitioner's] agent"); *Porter* v. *State*, 339 Ark. 15, 16–19, 2 S. W. 3d 73, 74–76 (1999) (finding "good cause" for petitioner's failure to file a timely habeas petition where the petitioner's attorney terminated his representation without notifying petitioner and without taking "any formal steps to withdraw as the attorney of record").

Our recent decision in *Holland* v. *Florida*, 560 U. S. \_\_\_ (2010), is instructive. That case involved a missed one-year deadline, prescribed by 28 U. S. C. §2244(d), for filing a federal habeas petition. *Holland* presented two issues: first, whether the §2244(d) time limitation can be tolled for equitable reasons, and, second, whether an attorney's unprofessional conduct can ever count as an "extraordinary circumstance" justifying equitable tolling. 560 U. S., at \_\_\_, \_\_\_–\_\_\_ (slip op., at 1, 16–17) (internal quotation marks omitted). We answered yes to both questions.

On the second issue, the Court recognized that an attorney's negligence, for example, miscalculating a filing deadline, does not provide a basis for tolling a statutory time limit. *Id.,* at \_\_\_ (slip op., at 19); *id.,* at \_\_\_–\_\_\_ (ALITO, J., concurring in part and concurring in judgment) (slip op., at 5–6); see *Lawrence* v. *Florida*, 549 U. S. 327, 336 (2007). The *Holland* petitioner, however, urged that attorney negligence was not the gravamen of his complaint. Rather, he asserted that his lawyer had detached himself from any trust relationship with his client: "[My lawyer] has abandoned me," the petitioner complained to

the court.  560 U. S., at ___–___ (slip op., at 3–4) (brackets
and internal quotation marks omitted); see *Nara* v. *Frank*,
264 F. 3d 310, 320 (CA3 2001) (ordering a hearing on
whether a client's effective abandonment by his lawyer
merited tolling of the one-year deadline for filing a federal
habeas petition).

In a concurring opinion in *Holland*, JUSTICE ALITO
homed in on the essential difference between a claim of
attorney error, however egregious, and a claim that an
attorney had essentially abandoned his client.  560 U. S.,
at ___–___ (slip op., at 5–7).  Holland's plea fit the latter
category: He alleged abandonment "evidenced by counsel's
near-total failure to communicate with petitioner or to
respond to petitioner's many inquiries and requests over a
period of several years."  *Id.,* at ___ (slip op., at 6); see *id.,*
at ___–___, ___ (majority opinion) (slip op., at 3–4, 20).  If
true, JUSTICE ALITO explained, "petitioner's allegations
would suffice to establish extraordinary circumstances
beyond his control[:] Common sense dictates that a liti-
gant cannot be held constructively responsible for the
conduct of an attorney who is not operating as his agent
in any meaningful sense of that word."  *Id.,* at ___ (slip op.,
at 6).[7]

We agree that, under agency principles, a client cannot
be charged with the acts or omissions of an attorney who
has abandoned him.  Nor can a client be faulted for failing
to act on his own behalf when he lacks reason to believe
his attorneys of record, in fact, are not representing him.
We therefore inquire whether Maples has shown that his
attorneys of record abandoned him, thereby supplying the

―――――――

[7] *Holland* v. *Florida*, 560 U. S. ___ (2010), involved tolling of a federal
time bar, while *Coleman* v. *Thompson*, 501 U. S. 722 (1991), concerned
cause for excusing a procedural default in state court.  See *Holland*, 560
U. S., at ___ (slip op., at 18).  We see no reason, however, why the
distinction between attorney negligence and attorney abandonment
should not hold in both contexts.

"extraordinary circumstances beyond his control," *ibid.,* necessary to lift the state procedural bar to his federal petition.

## B

From the time he filed his initial Rule 32 petition until well after time ran out for appealing the trial court's denial of that petition, Maples had only three attorneys of record: Munanka, Ingen-Housz, and Butler. Unknown to Maples, not one of these lawyers was in fact serving as his attorney during the 42 days permitted for an appeal from the trial court's order.

### 1

The State contends that Sullivan & Cromwell represented Maples throughout his state postconviction proceedings. Accordingly, the State urges, Maples cannot establish abandonment by counsel continuing through the six weeks allowed for noticing an appeal from the trial court's denial of his Rule 32 petition. We disagree. It is undisputed that Munanka and Ingen-Housz severed their agency relationship with Maples long before the default occurred. See Brief for Respondent 47 (conceding that the two attorneys erred in failing to file motions to withdraw from the case). Both Munanka and Ingen-Housz left Sullivan & Cromwell's employ in the summer of 2002, at least nine months before the Alabama trial court entered its order denying Rule 32 relief. App. to Pet. for Cert. 258a. Their new employment—Munanka as a law clerk for a federal judge, Ingen-Housz as an employee of the European Commission in Belgium—disabled them from continuing to represent Maples. See Code of Conduct for Judicial Employees, Canon 4(D)(3) (1999) (prohibiting judicial employees from participating in "litigation against federal, state or local government"); Staff Regulations of Officials of the European Commission, Tit. I, Art. 12b

(2004) (employees cannot perform outside work without first obtaining authorization from the Commission), available at http://ec.europa.eu/civil_service/docs/toc100_en.pdf (as visited Jan. 13, 2012, and in Clerk of Court's case file). Hornbook agency law establishes that the attorneys' departure from Sullivan & Cromwell and their commencement of employment that prevented them from representing Maples ended their agency relationship with him. See 1 Restatement (Second) of Agency §112 (1957) (hereinafter Restatement (Second)) ("[T]he authority of an agent terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal."); 2 *id.*, §394, Comment *a* ("[T]he agent commits a breach of duty [of loyalty] to his principal by acting for another in an undertaking which has a substantial tendency to cause him to disregard his duty to serve his principal with only his principal's purposes in mind.").

Furthermore, the two attorneys did not observe Alabama's Rule requiring them to seek the trial court's permission to withdraw. See Ala. Rule Crim. Proc. 6.2, Comment. Cf. 1 Restatement (Second) §111, Comment *b* ("[I]t is ordinarily inferred that a principal does not intend an agent to do an illegal act."). By failing to seek permission to withdraw, Munanka and Ingen-Housz allowed the court's records to convey that they represented Maples. As listed attorneys of record, they, not Maples, would be the addressees of court orders Alabama law requires the clerk to furnish. See Ala. Rule Crim. Proc. 34.5 ("Upon the entry of any order in a criminal proceeding made in response to a motion, . . . the clerk shall, without undue delay, furnish all parties a copy thereof by mail or by other appropriate means.") and 34.4 ("[W]here the defendant is represented by counsel, service shall be made upon the attorney of record.").

Although acknowledging that Munanka and Ingen-

Housz severed their agency relationship with Maples upon their departure from Sullivan & Cromwell, the State argues that, nonetheless, Maples was not abandoned. Other attorneys at the firm, the State asserts, continued to serve as Maples' counsel. Regarding this assertion, we note, first, that the record is cloudy on the role other Sullivan & Cromwell attorneys played. In an affidavit submitted to the Alabama trial court in support of Maples' request that the court reissue its Rule 32 order, see *supra,* at 9, partner Marc De Leeuw stated that he had been "involved in [Maples'] case since the summer of 2001." App. to Pet. for Cert. 257a. After the trial court initially denied the State's motion to dismiss in December 2001, De Leeuw informed the court, Sullivan & Cromwell "lawyers working on this case for Mr. Maples prepared for [an anticipated] evidentiary hearing." *Id.,* at 258a. Another Sullivan & Cromwell attorney, Felice Duffy, stated, in an affidavit submitted to the Alabama trial court in September 2003, that she "ha[d] worked on [Maples'] case since October 14, 2002." App. 231. But neither De Leeuw nor Duffy described what their "involve[ment]" or "wor[k] on [Maples'] case" entailed. And neither attorney named the lawyers, other than Munanka and Ingen-Housz (both of them still with Sullivan & Cromwell in December 2001), engaged in preparation for the expected hearing. Nor did De Leeuw identify the specific work, if any, other lawyers performed on Maples' case between Munanka's and Ingen-Housz's departures and the firm's receipt of the telephone call from Maples' mother.[8]

––––––––––

[8] The unclear state of the record is perhaps not surprising, given Sullivan & Cromwell's representation of Maples after the default. As *amici* for Maples explain, a significant conflict of interest arose for the firm once the crucial deadline passed. Brief for Legal Ethics Professors et al. as *Amici Curiae* 23–27. Following the default, the firm's interest in avoiding damage to its own reputation was at odds with Maples' strongest argument—*i.e.,* that his attorneys had abandoned him,

The slim record on activity at Sullivan & Cromwell, however, does not warrant a remand to determine more precisely the work done by firm lawyers other than Munanka and Ingen-Housz. For the facts essential to our decision are not in doubt. At the time of the default, the Sullivan & Cromwell attorneys who later came forward—De Leeuw, Felice Duffy, and Kathy Brewer—had not been admitted to practice law in Alabama, had not entered their appearances on Maples' behalf, and had done nothing to inform the Alabama court that they wished to substitute for Munanka and Ingen-Housz. Thus, none of these attorneys had the legal authority to act on Maples' behalf before his time to appeal expired. Cf. 1 Restatement (Second) §111 (The "failure to acquire a qualification by the agent without which it is illegal to do an authorized act . . . terminates the agent's authority to act.").[9] What they did or did not do in their New York offices is therefore

_____

therefore he had cause to be relieved from the default. Yet Sullivan & Cromwell did not cede Maples' representation to a new attorney, who could have made Maples' abandonment argument plain to the Court of Appeals. Instead, the firm represented Maples through briefing and oral argument in the Eleventh Circuit, where they attempted to cast responsibility for the mishap on the clerk of the Alabama trial court. Given Sullivan & Cromwell's conflict of interest, Maples' federal habeas petition, prepared and submitted by the firm, is not persuasive evidence that Maples, prior to the default, ever "viewed himself" as represented by "the firm," see *post,* at 4, rather than by his attorneys of record, Munanka and Ingen-Housz.

[9] The dissent argues that the Sullivan & Cromwell attorneys had no basis "to infer that Maples no longer wanted them to represent him, simply because they had *not yet* qualified before the Alabama court." *Post,* at 6–7. While that may be true, it is irrelevant. What the attorneys could have inferred is that Maples would not have wanted them to file a notice of appeal on his behalf prior to their admission to practice in Alabama, for doing so would be "illegal," *post*, at 7 (internal quotation marks omitted). See also 1 Restatement (Second) §111, Comment *b*, quoted *supra,* at 16. For the critical purpose of filing a notice of appeal, then, the other Sullivan & Cromwell attorneys had no authority to act for Maples.

beside the point. At the time critical to preserving Maples'
access to an appeal, they, like Munanka and Ingen-Housz,
were not Maples' authorized agents.

2

Maples' only other attorney of record, local counsel
Butler, also left him abandoned. Indeed, Butler did not
even begin to represent Maples. Butler informed Munan-
ka and Ingen-Housz that he would serve as local counsel
only for the purpose of enabling the two out-of-state attor-
neys to appear *pro hac vice. Supra,* at 5–6. Lacking the
necessary "resources, available time [and] experience,"
Butler told the two Sullivan & Cromwell lawyers, he
would not "deal with substantive issues in the case." *Ibid.*
That the minimal participation he undertook was incon-
sistent with Alabama law, see Rule VII, *supra*, at 5, un-
derscores the absurdity of holding Maples barred because
Butler signed on as local counsel.

In recognizing that Butler had no role in the case other
than to allow Munanka and Ingen-Housz to appear *pro
hac vice*, we need not rely solely on Butler's and De
Leeuw's statements to that effect. App. to Pet. for Cert.
255a–258a. Other factors confirm that Butler did not
"operat[e] as [Maples'] agent in any meaningful sense of
that word." *Holland*, 560 U. S., at ___ (ALITO, J., concur-
ring in part and concurring in judgment) (slip op., at 6).
The first is Butler's own conduct. Upon receiving a copy of
the trial court's Rule 32 order, Butler did not contact
Sullivan & Cromwell to ensure that firm lawyers were
taking appropriate action. Although Butler had reason to
believe that Munanka and Ingen-Housz had received a
copy of the court's order, see App. 225 (indicating that
Munanka and Ingen-Housz were CC'd on the order), But-
ler's failure even to place a phone call to the New York
firm substantiates his disclaimer of any genuinely repre-
sentative role in the case.

Notably, the State did not treat Butler as Maples' actual representative. Assistant Attorney General Hayden addressed the letter informing Maples of the default directly to Maples in prison. See *supra,* at 8. Hayden sent no copy to, nor did he otherwise notify, any of the attorneys listed as counsel of record for Maples. Lawyers in Alabama have an ethical obligation to refrain from communicating directly with an opposing party known to be represented by counsel. See Ala. Rule of Professional Conduct 4.2 (2003); Ala. Rule Crim. Proc. 34.4 (requiring that the service of all documents "be made upon the attorney of record"). In writing directly and only to Maples, notwithstanding this ethical obligation, Assistant Attorney General Hayden must have believed that Maples was no longer represented by counsel, out-of-state or local.[10]

In sum, the record admits of only one reading: At no time before the missed deadline was Butler serving as Maples' agent "in any meaningful sense of that word." *Holland,* 560 U. S., at ___ (opinion of ALITO, J.) (slip op., at 6).

3

Not only was Maples left without any functioning attorney of record, the very listing of Munanka, Ingen-Housz, and Butler as his representatives meant that he had no right personally to receive notice. See *supra,* at 16. He in

---

[10] It bears note, as well, that the State served its response to Maples' Rule 32 petition only on Munanka at Sullivan & Cromwell's New York address, not on Butler. App. 26. While the State may not be obligated to serve more than one attorney of record, its selection of New York rather than local counsel is some indication that, from the start, the State was cognizant of the limited role Butler would serve. Conforming the State's Rule to common practice, in 2006, the Alabama Supreme Court amended the provision on appearances by out-of-state counsel to eliminate the requirement that such attorneys associate local counsel when representing indigent criminal defendants *pro bono* in postconviction proceedings. See *supra,* at 5, n. 3.

fact received none or any other warning that he had better fend for himself. Had counsel of record or the State's attorney informed Maples of his plight before the time to appeal ran out, he could have filed a notice of appeal himself[11] or enlisted the aid of new volunteer attorneys.[12] Given no reason to suspect that he lacked counsel able and willing to represent him, Maples surely was blocked from complying with the State's procedural rule.

C

"The cause and prejudice requirement," we have said, "shows due regard for States' finality and comity interests while ensuring that 'fundamental fairness [remains] the central concern of the writ of habeas corpus.'" *Dretke* v. *Haley*, 541 U. S. 386, 393 (2004) (quoting *Strickland* v. *Washington,* 466 U. S. 668, 697 (1984)). In the unusual circumstances of this case, principles of agency law and fundamental fairness point to the same conclusion: There was indeed cause to excuse Maples' procedural default. Through no fault of his own, Maples lacked the assistance of any authorized attorney during the 42 days Alabama allows for noticing an appeal from a trial court's denial of postconviction relief. As just observed, he had no reason to suspect that, in reality, he had been reduced to *pro se* status. Maples was disarmed by extraordinary circumstances quite beyond his control. He has shown ample cause, we hold, to excuse the procedural default into which

_____

[11] The notice is a simple document. It need specify only: the party taking the appeal, the order or judgment appealed from, and the name of the court to which appeal is taken. Ala. Rule App. Proc. 3(c) (2000).

[12] Alabama grants out-of-time appeals to prisoners proceeding *pro se* who were not timely served with copies of court orders. See *Maples* v. *Allen*, 586 F. 3d 879, 888, and n. 6 (CA11 2009) *(per curiam)* (citing *Ex parte Miles*, 841 So. 2d 242, 243 (Ala. 2002), and *Ex parte Robinson*, 865 So. 2d 1250, 1251–1252 (Ala. Crim. App. 2003) *(per curiam)*). Though Maples was not a *pro se* petitioner on the record, he was, in fact, without authorized counsel.

he was trapped when counsel of record abandoned him
without a word of warning.

### III

Having found no cause to excuse the failure to file a
timely notice of appeal in state court, the District Court
and the Eleventh Circuit did not reach the question of
prejudice.  See *supra,* at 10–11.  That issue, therefore,
remains open for decision on remand.

*     *     *

For the reasons stated, the judgment of the Court of
Appeals for the Eleventh Circuit is reversed, and the case
is remanded for further proceedings consistent with this
opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 10–63

CORY R. MAPLES, PETITIONER *v.* KIM T. THOMAS, COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[January 18, 2012]

JUSTICE ALITO, concurring.

I join the opinion of the Court. Unbeknownst to petitioner, he was effectively deprived of legal representation due to the combined effect of no fewer than eight unfortunate events: (1) the departure from their law firm of the two young lawyers who appeared as counsel of record in his state postconviction proceeding; (2) the acceptance by these two attorneys of new employment that precluded them from continuing to represent him; (3) their failure to notify petitioner of their new situation; (4) their failure to withdraw as his counsel of record; (5) the apparent failure of the firm that they left to monitor the status of petitioner's case when these attorneys departed; (6) when notice of the decision denying petitioner's request for state postconviction relief was received in that firm's offices, the failure of the firm's mail room to route that important communication to either another member of the firm or to the departed attorneys' new addresses; (7) the failure of the clerk's office to take any action when the envelope containing that notice came back unopened; and (8) local counsel's very limited conception of the role that he was obligated to play in petitioner's representation. Under these unique circumstances, I agree that petitioner's attorneys effectively abandoned him and that this aban-

donment was a "cause" that is sufficient to overcome petitioner's procedural default.

In an effort to obtain relief for his client, petitioner's counsel in the case now before us cast blame for what occurred on Alabama's system of providing legal representation for capital defendants at trial and in state collateral proceedings. See Brief for Petitioner 3–6. But whatever may be said about Alabama's system, I do not think that Alabama's system had much if anything to do with petitioner's misfortune. The quality of petitioner's representation at trial obviously played no role in the failure to meet the deadline for filing his notice of appeal from the denial of his state postconviction petition. Nor do I see any important connection between what happened in this case and Alabama's system for providing representation for prisoners who are sentenced to death and who wish to petition the state courts for collateral relief. Unlike other States, Alabama relies on attorneys who volunteer to represent these prisoners *pro bono*, and we are told that most of these volunteers work for large, out-of-state firms. *Id.*, at 4. Petitioner's brief states that the Alabama system had "a direct bearing on the events giving rise . . . to the procedural default at issue," *id.*, at 3, but a similar combination of untoward events could have occurred if petitioner had been represented by Alabama attorneys who were appointed by the court and paid for with state funds. The firm whose lawyers represented petitioner *pro bono* is one of the country's most prestigious and expensive, and I have little doubt that the vast majority of criminal defendants would think that they had won the lottery if they were given the opportunity to be represented by attorneys from such a firm. See *id.*, at 9 (stating that it "seemed as though Maples had won the lottery when two attorneys working at an elite New York law firm . . . agreed to represent Maples *pro bono*").

What occurred here was not a predictable consequence

of the Alabama system but a veritable perfect storm of misfortune, a most unlikely combination of events that, without notice, effectively deprived petitioner of legal representation. Under these unique circumstances, I agree that petitioner's procedural default is overcome.

# SUPREME COURT OF THE UNITED STATES

---

No. 10–63

---

## CORY R. MAPLES, PETITIONER *v.* KIM T. THOMAS, COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[January 18, 2012]

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting.

The Alabama Court of Criminal Appeals held that Cory Maples' appeal from the denial of his state postconviction petition was barred because he had not filed a notice of appeal within the allotted time. The Court now concludes that Maples has established cause for his procedural default by reason of abandonment by his attorneys. Because I cannot agree with that conclusion, and because Maples' alternative argument fares no better, I would affirm the judgment.

## I

## A

Our doctrine of procedural default reflects, and furthers, the principle that errors in state criminal trials should be remedied in state court. As we have long recognized, federal habeas review for state prisoners imposes significant costs on the States, undermining not only their practical interest in the finality of their criminal judgments, see *Engle* v. *Isaac*, 456 U. S. 107, 126–127 (1982), but also the primacy of their courts in adjudicating the constitutional rights of defendants prosecuted under state law, *id.,* at 128. We have further recognized that "[t]hese costs are

particularly high . . . when a state prisoner, through a procedural default, prevents adjudication of his constitutional claims in state court." *Coleman* v. *Thompson*, 501 U. S. 722, 748 (1991). In that situation, the prisoner has "deprived the state courts of an opportunity to address those claims in the first instance," *id.,* at 732, thereby leaving the state courts without "a chance to mend their own fences and avoid federal intrusion," *Engle*, 456 U. S., at 129. For that reason, and because permitting federal-court review of defaulted claims would "undercu[t] the State's ability to enforce its procedural rules," *ibid.,* we have held that when a state court has relied on an adequate and independent state procedural ground in denying a prisoner's claims, the prisoner ordinarily may not obtain federal habeas relief. *Coleman*, 501 U. S., at 729–730.

To be sure, the prohibition on federal-court review of defaulted claims is not absolute. A habeas petitioner's default in state court will not bar federal habeas review if "the petitioner demonstrates cause and actual prejudice," *id.,* at 748—"cause" constituting "something *external* to the petitioner, something that cannot fairly be attributed to him," that impeded compliance with the State's procedural rule, *id.,* at 753. As a general matter, an attorney's mistakes (or omissions) do not meet the standard "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Ibid.* (quoting *Murray* v. *Carrier*, 477 U. S. 478, 488 (1986)). See also *Link* v. *Wabash R. Co.*, 370 U. S. 626, 633–634, and n. 10 (1962).

When an attorney's error occurs at a stage of the proceedings at which the defendant has a constitutional right to effective assistance of counsel, that error may constitute cause to excuse a resulting procedural default. A State's failure in its duty to provide an effective attorney, as measured by the standard set forth in *Strickland* v. *Wash-*

*ington*, 466 U. S. 668 (1984), makes the attorney's error chargeable to the State, and hence external to the defense. See *Murray*, *supra*, at 488. But when the client has no right to counsel—as is the case in the postconviction setting, see *Pennsylvania* v. *Finley*, 481 U. S. 551, 555 (1987)—the client bears the risk of all attorney errors made in the course of the representation, regardless of the egregiousness of the mistake. *Coleman*, *supra,* at 754 ("[I]t is not the gravity of the attorney's error that matters, but that it constitutes a violation of petitioner's right to counsel, so that the error must be seen as an external factor").

B

In light of the principles just set out, the Court is correct to conclude, *ante*, at 14, that a habeas petitioner's procedural default may be excused when it is attributable to abandonment by his attorney. In such a case, *Coleman*'s rationale for attributing the attorney's acts and omissions to the client breaks down; for once the attorney has ceased acting as the client's agent, "well-settled principles of agency law*,"* 501 U. S., at 754, no longer support charging the client with his lawyer's mistakes. The attorney's mistakes may therefore be understood as an "external factor," *ibid.,* and in appropriate circumstances may justify excusing the prisoner's procedural default.

I likewise agree with the Court's conclusion, *ante*, at 15, that Maples' two out-of-state attorneys of record, Jaasi Munanka and Clara Ingen-Housz, had abandoned Maples by the time the Alabama trial court entered its order denying his petition for postconviction relief. As the Court observes, *ante*, at 15–16, without informing Maples or seeking leave from the Alabama trial court to withdraw from Maples' case, both Munanka and Ingen-Housz left Sullivan & Cromwell's employ and accepted new positions that precluded them from continuing to represent Maples.

This conduct amounted to renunciation of their roles as Maples' agents, see 1 Restatement (Second) of Agency §119, Comment *b* (1957) (hereinafter Restatement 2d), and thus terminated their authority to act on Maples' behalf, *id.,* §118. As a result, Munanka's and Ingen-Housz's failure to take action in response to the trial court's order should not be imputed to Maples.

It is an unjustified leap, however, to conclude that Maples was left unrepresented during the relevant window between the Alabama trial court's dismissal of his post-conviction petition and expiration of the 42-day period for filing a notice of appeal established by Alabama Rule of Appellate Procedure 4(a)(1) (2009). Start with Maples' own allegations: In his amended federal habeas petition, Maples alleged that, at the time he sought postconviction relief in Alabama trial court, he "was represented by Sullivan & Cromwell of New York, New York." App. 256. Although the petition went on to identify Munanka and Ingen-Housz as "the two Sullivan lawyers handling the matter," *id.,* at 257, its statement that Maples was "represented" by the firm itself strongly suggests that Maples viewed himself as having retained the services of the firm as a whole, a perfectly natural understanding. "When a client retains a lawyer who practices with a firm, the presumption is that both the lawyer and the firm have been retained." 1 Restatement (Third) of the Law Governing Lawyers §31, Comment *f,* p. 222 (1998). Admittedly, in connection with the attempt before the Alabama trial court to extend the time for appeal, Sullivan & Cromwell partner Marc De Leeuw submitted an affidavit stating that the firm's lawyers "handle *pro bono* cases on an individual basis" and that the lawyers who had appeared in Maples' case had followed that practice, "attempt[ing] not to use the firm name on correspondence or court papers." App. to Pet. for Cert. 257a. But Maples' habeas petition is the pleading that initiated the current litigation; and

surely the allegations that it contained should be given priority over representations made to prior courts.*

In any case, even if Maples had no attorney-client relationship with the Sullivan & Cromwell firm, Munanka and Ingen-Housz were surely not the only Sullivan & Cromwell lawyers who represented Maples on an individual basis. De Leeuw's affidavit acknowledged that he had "been involved in [Maples'] case since the summer of 2001," *ibid.*, roughly a year before Munanka and Ingen-Housz left Sullivan & Cromwell, and it further stated that after "Ms. Ingen-Housz and Mr. Munanka" learned of the court's initial order denying the State's motion to dismiss Maples' postconviction petition in December 2001, "the lawyers working on this case for Mr. Maples prepared for the evidentiary hearing" Maples had requested, *id.,* at 258a. Moreover, when Sullivan & Cromwell attorney Felice Duffy filed a motion to appear *pro hac vice* before the Alabama trial court in connection with the attempt to extend the deadline, she stated that she had "worked on [Maples'] case since October 14, 2002," App. 231, months before the procedural default took place.

According to the Court, see *ante*, at 17, De Leeuw's affidavit does not make clear how he was "involved" in

_____

*The Court says that the allegations in Maples' own habeas petition are not "persuasive evidence," *ante*, at 17–18, n. 8, because Maples' lawyers at Sullivan & Cromwell labored under a conflict of interest when they prepared the document. This is a curious point, since the effect of Maples' statement was to *implicate* Sullivan & Cromwell as a firm in missing the filing deadline. The conflict would have induced the Sullivan & Cromwell lawyers to *exonerate* the firm. To be sure, as the case later developed (at this stage abandonment had not yet been conceived as the litigating strategy), it would have been in Maples' interest to say he had no lawyers. But the issue the petition's statement raises is not whether Maples was cleverly represented; it is whether the statement was *true*. And if Sullivan & Cromwell's involvement in preparing the petition has any bearing upon that, it only reinforces the truth.

Maples' case or whether lawyers other than Munanka and Ingen-Housz were among those who prepared for the anticipated evidentiary hearing; and Duffy's motion does not make clear what her "wor[k]" entailed. But there is little doubt that Munanka and Ingen-Housz were not the only attorneys who engaged in the preparations; and that De Leeuw was "involved" and Duffy "worked" as lawyers for Maples (what other role could they have taken on?). De Leeuw's distinction between "Ms. Ingen-Housz and Mr. Munanka" and "the lawyers working on his case for Mr. Maples" would have been senseless if the latter category did not extend beyond the two named attorneys.

In sum, there is every indication that when the trial court entered its order dismissing Maples' postconviction petition in May 2003, Maples continued to be represented by a team of attorneys in Sullivan & Cromwell's New York office. The Court nonetheless insists that the actions of these attorneys are irrelevant because they had not been admitted to practice law in Alabama, had not entered appearances in the Alabama trial court, and had not sought to substitute for Munanka and Ingen-Housz. See *ante*, at 18–19. The Court does not, however, explain why these facts establish that the attorneys were not Maples' agents for the purpose of attending to those aspects of the case that did not require court appearance—which would certainly include keeping track of orders issued and filing deadlines. The Court's quotation from the Restatement of Agency, *ante*, at 18, that the "failure to acquire a qualification by the agent without which it is illegal to do an authorized act . . . terminates the agent's authority to act," 1 Restatement 2d, §111, at 290, omits the crucial condition contained at the end of the section: "if thereafter he [the agent] should infer that the principal, if he knew the facts, would not consent to the further exercise of the authority." There was no basis whatever for these attorneys to infer that Maples no longer wanted them to represent him,

simply because they had *not yet* qualified before the Alabama court. Though it would have been "illegal" for these attorneys to file a notice of appeal without being authorized to practice in Alabama, nothing prevented them from first seeking to secure admission to practice, as Munanka and Ingen-Housz initially had done, and *then* filing a notice of appeal.

It would create a huge gap in our *Coleman* jurisprudence to disregard all attorney errors committed before admission to the relevant court; and an even greater gap to disregard (as the Court suggests) all errors committed before the attorney enters an appearance. Moreover, even if these attorneys cannot be regarded as Maples' agents for purposes of conducting the Alabama litigation, they were *at least* his agents for purposes of advising him of the impending deadline. His unawareness was the fault of counsel who were his agents, and must be charged to him. What happened here is simply "[a]ttorney ignorance or inadvertence" of the sort that does not furnish cause to excuse a procedural default. *Coleman*, 501 U. S., at 753.

But even leaving aside the question of Maples' "unadmitted" attorneys at Sullivan & Cromwell, Maples had a fully admitted attorney, who had entered an appearance, in the person of local counsel, John Butler. There is no support for the Court's conclusion that Butler "did not even begin to represent Maples." *Ante*, at 19. True, the affidavit Butler filed with the Alabama trial court in the proceeding seeking extension of the deadline stated that he had "no substantive involvement" with the case, and that he had "agreed to serve as local counsel only." App. to Pet. for Cert. 255a. But a disclaimer of "substantive involvement" in a case, whether or not it violates a lawyer's ethical obligations, see *ante*, at 19, is not equivalent to a denial of any agency role at all. A local attorney's "nonsubstantive" involvement would surely include, *at a minimum*, keeping track of local court orders and advising

"substantive" counsel of impending deadlines. Nor did
Butler's explanation for his failure to act when he received
a copy of the trial court's order sound in abandonment.
Butler did not say, for instance, that he ignored the order
because he did not consider Maples to be his client. In-
stead, based on "past practice" and the content of the
order, Butler "assumed" that Maples' lawyers at Sullivan
& Cromwell would receive a copy. App. to Pet. for Cert.
256a.

The Court gets this badly wrong when it states that
"Butler's failure even to place a phone call to the New
York firm" demonstrates Butler's "disclaimer of any genu-
inely representative role." *Ante*, at 19. By equating the
very attorney error that contributed to Maples' procedural
default with the absence of an agency relationship, the
Court ensures that today's opinion will serve as a template
for future habeas petitioners seeking to evade *Coleman*'s
holding that ineffectiveness of postconviction counsel will
not furnish cause to excuse a procedural default. See 501
U. S., at 752–754. The trick will be to allege, not that
counsel was ineffective, but rather that counsel's ineffec-
tiveness demonstrates that he was not a genuinely repre-
sentative agent. No precedent should be so easily circum-
vented by word games, but the damage is particularly
acute when the affected precedent is so firmly "grounded
in concerns of comity and federalism." *Id.,* at 730.

The Court's last-gasp attempt to justify its conclusion
that Butler was not Maples' agent is to point out that a
prosecutor sent a letter to Maples directly, informing him
of the defaulted appeal. See *ante*, at 20. The Court rea-
sons that the prosecutor must have thought that Maples
had been abandoned by his lawyers, since to communicate
with a represented party would have been a violation of
ethical standards. *Ibid.* But even if this supposition is
correct, it is hard to understand what it proves. What
matters, after all, is not whether the prosecutor *thought*

Maples had been abandoned, but whether Maples *really was* abandoned. And as it turns out, Butler's conduct after learning about the default further belies any such contention. Almost immediately, Butler began to cooperate with Maples' lawyers at Sullivan & Cromwell, filing papers as "Counsel for Mr. Maples" or "Local Counsel for Petitioner Cory Maples" in multiple courts in an attempt to rectify the mistake. See App. 229, 230, 236, 238. Had Butler reassumed his representational duties after having abandoned them? Hardly. There is no proper basis for a conclusion of abandonment *interruptus.*

## II

Maples argues in the alternative that his default should be excused because his right to due process was violated when the trial-court clerk failed to take action after Munanka's and Ingen-Housz's copies of the court's dismissal order were returned undeliverable. According to Maples, our decision in *Jones* v. *Flowers*, 547 U. S. 220 (2006), establishes that the clerk had a duty to do more.

We held in *Jones* that, when a mailed notice of a tax sale is returned unclaimed, a State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property. See *id.,* at 234. It is questionable whether that holding has any relevance to the circumstances here, which involved not the institution of proceedings against an unwitting litigant, but rather the issuance of an order in a pending case that was instituted by Maples himself. Indeed, I think it doubtful whether due process entitles a litigant to *any* notice of a court's order in a pending case. The Federal Rules certainly reject the notion that notice is an absolute requirement. Federal Rule of Civil Procedure 77(d)(2) provides that "[l]ack of notice of the entry [of an order or judgment] does not affect the time for appeal or relieve—or authorize the court to relieve—a party for failing to appeal within

the time allowed, except as allowed by Federal Rule of Appellate Procedure (4)(a)." And although Federal Rule of Appellate Rule 4(a)(6) in turn provides that the time for filing an appeal can be reopened when a litigant did not receive notice, it establishes 180 days after the judgment or order is entered as the outer limit by which a motion to reopen must be filed. See Fed. Rule App. Proc. 4(a)(6)(B).

There is no need to grapple with this question, however, because Butler received a copy of the trial court's order. "Under our system of representative litigation, 'each party . . . is considered to have notice of all facts, notice of which can be charged upon [his] attorney.'" *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 92 (1990) (quoting *Link* v. *Wabash R. Co.*, 370 U. S. 626, 634 (1962)). The notice to Butler was therefore constitutionally sufficient.

*        *        *

One suspects that today's decision is motivated in large part by an understandable sense of frustration with the State's refusal to waive Maples' procedural default in the interest of fairness. Indeed, that frustration may well explain the Court's lengthy indictment of Alabama's general procedures for providing representation to capital defendants, *ante*, at 2–4, a portion of the Court's opinion that is so disconnected from the rest of its analysis as to be otherwise inexplicable.

But if the interest of fairness justifies our excusing Maples' procedural default here, it does so whenever a defendant's procedural default is caused by his attorney. That is simply not the law—and cannot be, if the states are to have an orderly system of criminal litigation conducted by counsel. Our precedents allow a State to stand on its rights and enforce a habeas petitioner's procedural default even when counsel is to blame. Because a faithful application of those precedents leads to the conclusion that Maples has not demonstrated cause to excuse his proce-

SCALIA, J., dissenting

dural default; and because the reasoning by which the Court justifies the opposite conclusion invites future evisceration of the principle that defendants are responsible for the mistakes of their attorneys; I respectfully dissent.