BYBEE, Circuit Judge,
with whom CALLAHAN, BEA, IKUTA, and WATFORD, Circuit Judges, join, dissenting:
I take no pleasure in writing this dissent. Washington’s counsel filed his notice of appeal one day late. The office of the Arizona Public Defender is well known to this court and enjoys an outstanding reputation. Washington’s lead counsel has earned the respect of this court; he is an experienced and conscientious attorney, an expert in death penalty appeals and habe-as petitions. For anyone who has litigated and has known the anxiety of counting and then recounting the days towards deadlines, this is a nightmare.
For at least the last fourteen years, the Supreme Court has been telling us that we have failed to appreciate the difference between jurisdictional rules and claim-processing rules. See, e.g., Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434-36, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011); Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 160-63, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010); Union Pac. R.R. Co. v. Locomotive Eng’rs & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67, 81-82, 130 S.Ct. 584, 175 L.Ed.2d 428 (2009); Arbaugh v. Y & H Corp., 546 U.S. 500, 510-12, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); Eberhart v. United States, 546 U.S. 12, 15-16, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam); Kontrick v. Ryan, 540 U.S. 443, 452-56, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004); United States v. Cotton, 535 U.S. 625, 630-31, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). The Court has chided itself that, “Courts — including this Court — have sometimes mischaracterized claim-processing rules ... as jurisdictional limitations.” Reed Elsevier, 559 U.S. at 161, 130 S.Ct. 1237. Accordingly, “[i]n light of the important distinctions between ju- *1103 risdietional prescriptions and claim-processing rules,” the Court has “encouraged federal courts and litigants to ‘facilitate] clarity by using the term “jurisdictional” only when it is apposite.’” Id. (quoting Kontrick, 540 U.S. at 455, 124 S.Ct. 906). We have responded to the Court’s prompting by carefully considering whether cases must be dismissed for jurisdictional reasons or for other, non-jurisdictional reasons. See, e.g., Kwai Fun Wong v. Beebe, 732 F.3d 1030, 1051 (9th Cir. 2013) (en banc); Irigoyen-Briones v. Holder, 644 F.3d 943, 947-49 (9th Cir. 2011); United States v. Jacobo Castillo, 496 F.3d 947, 951-54 (9th Cir. 2007) (en banc); United States v. Sadler, 480 F.3d 932, 939-40 (9th Cir. 2007).
Rules that are part of the process of adjudicating claims and rules that constrain our jurisdiction are very different kinds of rules. From the perspective of the parties, it may not make much difference if the result is an adverse judgment; after all, a party doesn’t usually care if the case is dismissed under Federal Rule of Civil Procedure 12(b)(1) or Rule 12(b)(6), because the effective result is the same. But the application of jurisdictional rules versus claim-processing rules is of great consequence to the federal courts. Claim-processing rules go to the way in which we will conduct our ordinary business. Congress has granted us power, through the Rules Enabling Act, to promulgate rules of procedure in our courts. See 28 U.S.C. § 2072(a). Such rules bring order to the process by which we resolve disputes. Such rules must be respected and enforced, but these rules, after all, are our rules and we feel a freer hand in the flexible application of those rules. Such rules may be waived or forfeited. See Union Pac. R.R. Co., 558 U.S. at 81-82, 130 S.Ct. 584; Kontrick, 540 U.S. at 456, 124 S.Ct. 906.
Jurisdictional rules, by contrast, go to our “power to hear a case” and “can never be forfeited or waived.” Arbaugh, 546 U.S. at 514, 126 S.Ct. 1235 (quoting Cotton, 535 U.S. at 630, 122 S.Ct. 1781). They are grounded in Article III of the Constitution, the organic provision that creates the federal courts and locates those courts within a system of separated powers. Article III vests the “judicial Power of the United States” in “one Supreme Court, and such inferior courts as the Congress may from time to time ordain and establish.” U.S. Const. art. Ill, § 1. The “judicial Power” is not a self-defining term, but
shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; — to all Cases affecting Ambassadors, other public Ministers and Consuls; — to all Cases of admiralty and maritime Jurisdiction; — to Controversies to which the United States shall be Party; — to Controversies between two or more States; — between Citizens of different states, — [and] between Citizens of the same State claiming Land under Grants of different States.
U.S. Const, art. Ill, § 2, cl. 1, as amended by amend. XI. This section contains the outer limits of our jurisdiction. See Ex Parte McCardle, 74 U.S. 506, 513, 7 Wall. 506, 19 L.Ed. 264 (1868) (“The principle that the affirmation of appellate jurisdiction implies the negation of all such jurisdiction not affirmed having been thus established, it was an almost necessary consequence that acts of Congress, providing for the exercise of jurisdiction, should come to be spoken of as acts granting jurisdiction, and not as acts making exceptions to the constitutional grant of it.”); Durousseau v. United States, 10 U.S. 307, 313-14, 6 Cranch 307, 3 L.Ed. 232 (1810) (“Had the judicial act *1104 created the supreme court, without defining or limiting its jurisdiction, it must have been considered as possessing all the jurisdiction which the constitution assigns to it.... [The appellate powers of this Court] are limited and regulated by the judicial and by such other acts as have been passed on the subject.”). Other than cases affecting ambassadors, ministers, and consuls, Congress controls the Supreme Court’s jurisdiction. U.S. Const, art. Ill, § 2, cl. 2 (“[T]he supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.”). Because Congress has the power to create lower federal courts under Article III, Section 1, Congress also has the power to regulate the jurisdiction of the lower courts, including this one. U.S. const, art. Ill, § 1; Sheldon v. Sill, 49 U.S. 441, 448-49, 8 How. 441, 12 L.Ed. 1147 (1850). We possess only such jurisdiction as Congress has granted by statute, and no more. Sheldon, 49 U.S. at 449 (“Courts created by statute can have no jurisdiction but such as the statute confers.”); United States v. Hudson, 11 U.S. 32, 33, 7 Cranch 32, 3 L.Ed. 259 (1812) (“All other Courts created by the general Government possess no jurisdiction but what is given them by the power that creates them, and can be vested with none but what the power ceded to the general Government will authorize them to confer.”); Veterans for Common Sense v. Shinseki, 678 F.3d 1013, 1019 (9th Cir. 2012). These jurisdictional limitations may not be waived but must be observed with exactness, lest we seize power we have no right to exercise. Because we are a “government of laws and not of men,” Mass. Const, pt. I, art. XXX, sometimes, as judges in hard cases, we must decline to exercise power even when it is contrary to our best inclinations as people. But it is the nature of a government of laws that we must resist our inclinations especially when it contravenes the power entrusted to us.
This is one of those hard cases.
I
. Petitioner Theodore Washington’s petition for a writ of habeas corpus was denied by the district court. He sought to appeal, but his notice of appeal was filed one business day late due to a paralegal’s error in calculating the filing deadline. By the time this court issued an order to show cause as to why the appeal should not be dismissed as untimely, Washington had missed the thirty-day grace period provided under Federal Rule of Appellate Procedure (FRAP) 4(a)(5) in which to file a motion for extension of time to file an appeal. Rule 4(a) codifies the jurisdictional time limits on the right to appeal imposed by Congress in 28 U.S.C. § 2107. The statute provides:
Except as otherwise provided in this section, no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree.
28 U.S.C. § 2107(a). In turn, the federal courts implemented this statute in FRAP 4(a): “In a civil case, except as provided in [this Rule], the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.” Fed. R. App. P. 4(a).
Congress provided an exception to § 2107(a) in § 2107(c): “The district court may, upon motion filed not later than 30 days after the expiration of the time otherwise set for bringing appeal, extend the time for appeal upon a showing of excusable neglect or good cause.” 28 U.S.C. *1105 § 2107(c).[1] Again, the federal courts have implemented this provision in FRAP 4(a)(5) and (6).[2] See Obaydullah v. Obama, 688 F.3d 784, 789 (D.C. Cir. 2012) (per curiam). The rule provides that a party must file a notice of appeal within thirty days after the entry of judgment, with only two narrow, exceptions: (1) where a party can demonstrate “excusable neglect,” the party may file a motion for an extension of time up to thirty days after the date to timely appeal, Fed. R. App. P. 4(a)(5); and (2) where a party fails to receive notice of the judgment, the party may move to reopen the time to file within 180 days after the entry of judgment, or within fourteen days after receiving notice of the judgment, whichever is earlier, Fed. R. App. P. 4(a)(6).
Had Washington’s attorney realized his error earlier, he could have sought an extension of time from the district court under Rule 4(a)(5) and rectified the untimely filing. However, having missed the time in which to seek an extension, Washington filed a motion in the district court under Federal Rule of Civil Procedure 60(b), asking the district court to vacate and reenter its original judgment denying his habeas petition. The intended effect of this procedure was to restart the thirty-day period in which to timely file an appeal — Washington was not, in fact, seeking to amend or suspend any substantive part of the district court’s order denying his petition. The district court denied the motion, finding that Rule 60(b) could not be used solely for the purpose of restarting the time to file an appeal. I agree, and conclude that this court therefore lacks jurisdiction to entertain Washington’s untimely appeal. The U.S. Supreme Court was clear in Bowles v. Russell, 551 U.S. 205, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007), that the FRAP timely filing requirements are “mandatory and jurisdictional,” id. at 209, 127 S.Ct. 2360 (quotations omitted), barring courts from creating equitable exceptions that would allow an appeal where a party fails to comply with these require *1106 ments, however “extraordinary” the circumstances that precipitated the missed deadline. Today, the majority chooses to ignore that holding by shoehorning an essentially equitable exception to the jurisdictional requirements of Rule 4(a) into Rule 60(b). Our jurisdiction extends no farther than Congress has granted by statute, Sheldon, 49 U.S. at 449, which in this case means the outer limits of § 2107. That statute does not admit the exception created by the majority.
A
In Bowles, the Supreme Court held that the “timely filing of a notice of appeal in a civil case is a jurisdictional requirement,” because the Rule 4(a) filing requirements are statutorily based in 28 U.S.C. § 2107. Bowles, 551 U.S. at 214, 127 S.Ct. 2360. Likewise, the exceptions to the Rule 4(a) timely filing requirements — Rules 4(a)(5) and 4(a)(6) — are based in 28 U.S.C. § 2107(c). Bowles dealt specifically with Rule 4(a)(6) and an equitable exception known as the “unique circumstances” doctrine. Id. at 213, 127 S.Ct. 2360. Bowles failed to file a timely appeal from the district court’s denial of his petition for a writ of habeas corpus. He sought, as permitted by Rule 4(a)(6), to reopen the period for filing his appeal, which would have given him an additional fourteen days. Inexplicably, the district court gave him seventeen days, and he filed within that period, but after the fourteen-day period had expired. Id. at 207, 127 S.Ct. 2360. The Court held that Bowles’ appeal was late and must be dismissed because courts “[have] no authority to create equitable exceptions to jurisdictional requirements” in order to excuse an untimely filing. Id. at 214, 127 S.Ct. 2360.
The result in Bowles seemed particularly harsh given that the untimely filing period was expressly authorized by district court order. The Supreme Court still denied relief, noting that “[i]f rigorous rules like the one applied today are thought to be inequitable, Congress may authorize courts to promulgate rules that excuse compliance with the statutory time limits.” Id. But in the end, the Supreme Court “lack[ed] present authority to make the exception petitioner seeks.” Id. at 215, 127 S.Ct. 2360. The issue was one of judicial power, not judicial will.
Unlike Bowles, the case before us today deals with the thirty-day grace period under Rule 4(a)(5) rather than the 180-day time limit in Rule 4(a)(6). The reasoning of Bowles, however, clearly applies, because the thirty-day grace period provided in Rule 4(a)(5) also derives from 28 U.S.C.§ 2107(c). If equitable exceptions cannot be made to Rule 4(a)(6) because Rule 4(a)(6) is based in statute and therefore jurisdictional, I see no principled basis for distinguishing Rule 4(a)(5), and the majority offers none. Moreover, the Court in Bowles spoke broadly about the Rule 4(a) timing requirements and exceptions— it did not base its reasoning off any particular distinguishing feature of Rule 4(a)(6) such that the decision should not be read to apply to Rule 4(a)(5) as well. The lesson to be drawn from Bowles is that when Congress provides timely filing requirements, courts are meant to stick to them, even where the resulting consequences are harsh, as they admittedly are here.
B
The majority argues that its decision today does no violence to the principle announced in Bowles because its decision here rests on Federal Rule of Civil Procedure 60(b), and Rule 60(b) gives district courts the authority to relieve parties from judgment. Here, the majority concludes that this rule may be used not to amend or seek relief from a district court judgment, as the rule is intended to be used, but to seek relief only from the date of that judg *1107 ment. Maj. Op. at 1097. Allowing the district court to vacate and reenter the exact same judgment in order to enlarge the time to file an appeal constitutes a misuse of Rule 60(b) and violates Bowles by circumventing the statutory time frame governing appeals.[3]
Unlike Rules 4(a)(5) and 4(a)(6), which are based in statute, Rule 60(b) is a court-promulgated rule that gives district courts the authority to provide relief from a final judgment if a motion is filed “within a reasonable time” and “not more than a year after the entry of the judgment.” Fed. R. Civ. P. 60(c)(1). Relief may be afforded, among other reasons, for mistake, excusable neglect, or extraordinary circumstances that justify relief. Fed. R. Civ. P. 60(b)(1), (6); Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P’ship, 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (holding that relief under Rule 60(b)(6) requires a party to show “‘extraordinary circumstances’ suggesting that the party is faultless in the delay”); Cmty. Dental Servs. v. Tani, 282 F.3d 1164, 1168 (9th Cir. 2002). Under the majority’s reading, Rule 60(b) subsumes Rule 4(a): if Rule 60(b) provides an avenue of relief from an untimely appeal, then parties actually have up to a year in which to seek an appeal, not thirty days as provided by Rule 4(a)(5). Such a reading not only contradicts Rule 4(a), but, more importantly, 28 U.S.C. § 2107, and the contradiction is not easily resolved: Rule 60(b) is a claim-processing rule, while Rule 4(a) is largely jurisdictional. But rather than interpret these rules to avoid such a conflict, i.e., by concluding that ■ Rule 60(b) simply does not provide relief from an untimely filing of a notice of appeal, the majority seeks to avoid what it perceives as an unfair result and ignores the fact that its holding allows Rule 60(b) to be used to circumvent the jurisdictional time limits of Rule 4(a).[4]
The majority writes that, “[f]or decades, courts have sparingly but consistently exercised their authority under Rule 60(b) to restore appeal rights.” Maj. Op. at 1097. It appears to base its entire decision on the principle that Rule 60(b) .gives district courts the general authority, based on historical practice, to revive lost appeal rights. The majority’s historical account of this use of Rule 60(b), however, leaves a *1108 great deal to be desired. There was indeed an historical practice of using Rule 60(b) to restart the time to file an appeal in a very-specific context: cases in which a party never received notice of the district court’s final judgment, and so missed the time to file an appeal because the party was not aware that an appeal had become possible. In Hill v. Hawes, 320 U.S. 520, 64 S.Ct. 334, 88 L.Ed. 283 (1944), the Supreme Court appeared to depart from longstanding precedent when it held that the district court in that case had the authority to vacate and reenter its original judgment to restart-the time to file an appeal where the clerk of the court had failed to serve notice of the judgment on the parties as required by Federal Rule of Civil Procedure 77(d). Id. at 523-24, 64 S.Ct. 334; see also id. at 525-26, 64 S.Ct. 334 (Stone, C.J., dissenting) (listing cases in which the Court had prohibited an extension of the time to file an appeal). The Court reasoned that, while Rule 60 did “not in terms apply to the situation,” it was acceptable for the trial judge to provide relief “in the view that the petitioner relied upon the provisions of Rule 77(d) with respect to notice.” Id. at 524, 64 S.Ct. 334.
The majority interprets Hill to stand for the much broader proposition that courts may use Rule 60(b) in any circumstance that a court deems “extraordinary” in order to restart the time to file an appeal. Maj. Op. at 1097.[5] I see no such broad proposition in that case; rather, as I have said, the Court appeared to create a specific exception to the rule against extending the time to file an appeal where a party failed to receive notice of the judgment. It is also worth noting that the Hill Court dealt with a court-promulgated rule setting the time to file an appeal, not a statute that conditioned jurisdiction on timely filing. Hill, 320 U.S. at 521-23, 64 S.Ct. 334. See generally Wright, Miller, et al., 16A Fed. Prac. & Proc. Juris. § 3950.3 (4th ed. 2016) (discussing the history of FRAP Rule 4). There was, in fact, a statute setting a three-month statutory deadline for appeals at the time that case was decided. See 43 Stat. 936, 940. But the three-month statutory deadline was irrelevant in Hill, because the appeal, although late under the D.C. Circuit’s twenty-day rule — which the Court concluded the circuit had the authority to set — had still been filed within the three-month deadline set by Congress. Hill, 320 U.S. at 521-22, 64 S.Ct. 334 (noting that the judgment was entered on May 7, 1940 and that the appeal was filed on June 14,1940). The Court therefore had no need to address either the statute or any jurisdictional questions its circumvention might have raised. Furthermore, in *1109 examining the statutory deadline, the Court observed that the three-month provision did not even apply to the D.C. Circuit, because that court was governed by a separate statute. Id., at 522-23, 64 S.Ct. 334 (“[T]he statute conferring power on the [D.C.] Court of Appeals to set the time for appeal was not superseded by the legislation creating and defining the jurisdiction of circuit courts of appeals.”).[6] Either way, the problem identified in Bowles with circumventing a congressionally mandated time frame was not an issue in Hill.
Hill is irrelevant for another reason: a similar exception has now been codified in § 2107. See 28 U.S.C. § 2107(c)(1) (providing relief for “a party entitled to notice of the entry of a judgment or order [who] did not receive such notice”). Section 2107 then limits the time within which relief can be granted to the party. If Hill once stood for anything relevant to this case, it has been superceded by statute. Indeed, Hill has also been superceded by rule. Federal Rule of Civil Procedure 77(d)(2) provides that “[l]aek of notice of the entry does not affect the time for appeal or relieve — or authorize the court to relieve — a party for failing to appeal within the time allowed, except as allowed by Federal Rule of Appellate Procedure 4(a).” This rule, which binds the district court, prohibits the powers exercised by the Court in Hill. The 1946 Advisory Notes to Rule 77 state that
Rule 77(d) has been amended to avoid such situations as the one arising in Hill v. Hawes.... [T]he effect of the decision in Hill v. Hawes is to give the district court power, in its discretion and without time limit, ... to vacate a judgment and reenter it for the purpose of reviving the right of appeal. This seriously affects the finality of judgments.
Fed. R. Civ. P. 77 Advisory Committee Notes.
What the majority has done is take Hill’s narrow exception and make it limitless. It takes the holding of Hill — which Congress has superceded by statute and which the federal courts have addressed by rule — and finds additional authority in that decision. In the process, it ignores § 2107, upends Rules 4 and 77, and overrules, sub silentio, our own prior, considered decisions. See In re Stein, 197 F.3d 421, 426 (9th Cir. 1999) (“Rule 4(a) and Rule 77(d) now form a tessellated scheme; *1110 they leave no gaps for Rule 60(b) to fill.”). It is a daring and brazen move.
Nor have the lower courts, in the years since Hill was decided, interpreted that ease as broadly as the majority does today. The majority cites few cases in support of the proposition that Rule 60(b) may be used to circumvent appellate filing periods that do not involve situations in which a party failed to receive notice of judgment, save two from the Sixth Circuit, see Tanner v. Yukins, 776 F.3d 434 (6th Cir. 2015); Lewis v. Alexander, 987 F.2d 392 (6th Cir. 1993), and two involving “attorney abandonment,” which is not at issue here, see Ramirez v. United States, 799 F.3d 845 (7th Cir. 2015); Mackey v. Hoffman, 682 F.3d 1247 (9th Cir. 2012). Maj. Op. at 1094-95. Indeed, I have found no other cases in which courts have held that Rule 60(b) may be used to circumvent the time for filing an appeal where a party missed the filing deadline for reasons other than lack of notice of the lower court judgment or attorney abandonment — whether those reasons are mistake, neglect, or some other “extraordinary circumstance.”
Several courts, in fact, held before Bowles that Rule 60(b) may not be used to circumvent timely filing deadlines in non-lack-of-notice cases. The Third, Fifth, Seventh, and Eleventh Circuits have all discussed at length why relief is not available under any provision of Rule 60(b) in order to restart the time to file an appeal. See, e.g., Jackson v. Crosby, 437 F.3d 1290, 1296 (11th Cir. 2006) (per curiam); Saudi Basic Indus. Corp. v. Exxon Corp., 364 F.3d 106, 111-12 (3d Cir. 2004) (citing West v. Keve, 721 F.2d 91 (3d Cir. 1983)); Dunn v. Cockrell, 302 F.3d 491, 492-94 (5th Cir. 2002) (per curiam); Bell v. Eastman Kodak Co., 214 F.3d 798, 800-02 (7th Cir. 2000).
As the Third Circuit pointed out in West, 721 F.2d at 96-97, Rule 4(a) is a specific rule of appellate procedure, one that is based on a statute which governs the time in which appeals must be taken, see 28 U.S.C. § 2107. Rule 60(b), on the other hand, is a court-promulgated general procedural rule that applies to the district courts, providing for relief from judgments. The Third Circuit concluded that under the general/specific canon of construction, Rule 4(a), not Rule 60(b), controls the time to appeal, because Rule 4(a) is specific to the timing of appeals. West, 721 F.3d at 96-97. The court concluded that this was so despite the “inequitable results that may flow from a strict application of the harsh time constraints in Rule 4(a).” Id. at 96. The court also pointed out that “to allow a party to rely on Rule 60(b) as an alternative to the time constraints of Rule 4(a) would have the substantive effect of nullifying the provisions of Rule 4(a)(5).” Id.[7]
The Fifth and Eleventh Circuits agreed for similar reasons. See Dunn, 302 F.3d at 492-93; Jackson, 437 F.3d at 1296.[8] The *1111 Fifth Circuit additionally noted that relief is limited under Rule 4(a)(5) to protect the finality of judgments, and that this is particularly important where, as here, “the movant neither complains of any denial of a full and fair hearing before the district court nor seeks by the ruling to have the district court alter its ruling, but rather asks only that the order be vacated and reentered.” Dunn, 302 F.3d at 493 (quoting United States v. O’Neil, 709 F.2d 361, 373 (5th Cir. 1983)). In such a situation, where the Rule 60(b) motion “is avowedly being used only to extend the time for appeal,” it “squarely collides with Rule 4(a)(5),” and therefore is impermissible. Id.
The Eleventh and Seventh Circuits likewise touched on a similar issue, noting that the purpose of Rule 60(b) is to challenge an error made by the district court; therefore, using Rule 60(b) as a substitute for a timely appeal goes “outside the scope of the rule.” Bell, 214 F.3d at 801-02; see also Jackson, 437 F.3d at 1296 (“Petitioner was not asking for relief from any order of the district court, but was instead attempting to resuscitate the time to file an appeal by asking the district court to circumvent an order from this court dismissing the appeal as untimely.”).
Based on these cases alone, I would be reluctant to conclude that Rule 60(b) provides an avenue for relief in the situation we face here: not a lack-of-notice case, but a case in which the petitioner’s attorney negligently failed to timely file. The weight of pre-Bowles case law does not appear to support such an extension of this practice. In fact it suggests the opposite: that, contrary to the majority’s opinion, Rule 60(b) cannot be, and has not been, used in the manner the majority uses it in this case.[9]
But in light of Bowles, I fail to see how a claim-processing rule like Rule 60(b) can legitimately be used to avoid a jurisdictional, statutory filing requirement, and the *1112 majority has offered no explanation on this point. Post-Bowles, two circuits have addressed the interaction between the Supreme Court’s decision and Rule 60(b). In In re Sealed Case (Bowles) (a different Bowles), the D.C. Circuit rejected the argument that Rule 60(b) could be used to circumvent the time limits of Rule 4(a)(6), which provides for a 180-day extension of the time to file an appeal where a party never received notice of the lower court judgment. 624 F.3d 482, 486-88 (D.C. Cir. 2010). The appellant in that case argued that Rule 60(b) is a “court-promulgated rule” in which time limits are not jurisdictional, and that it could be used to afford relief from the time limit imposed by Rule 4(a). The D.C. Circuit disagreed. It observed that “the [Supreme] Court has never held that a party could use a court-promulgated rule to circumvent the jurisdictional bar on limits for reopening the time to appeal enacted by Congress,” and that allowing relief under Rule 60(b) would do just that. Id. at 486. Because “[t]he Court [in Bowles] spoke in unequivocal and uncompromising terms in stating that courts lacked power to carve out equitable exceptions to jurisdictional statutory requirements .... it would be difficult to imagine that the Court would not also view the use of Rule 60(b)” to circumvent the Rule 4(a) filing requirements as “illegitimate.” Id. at 486-87 (quoting Bowles, 551 U.S. at 214, 127 S.Ct. 2360).
The Fifth Circuit agrees. In Perez v. Stephens, 745 F.3d 174, 178-81 (5th Cir. 2014), the court revisited its decision in Dunn in light of Bowles, and concluded that Bowles provided even stronger support for the conclusion that Rule 60(b) could not be used to circumvent the timely filing requirements of Rule 4(a)(5). In Perez, the court dealt specifically with whether relief from an untimely appeal was available under Rule 60(b)(6), the “extraordinary circumstances” exception. The court recognized that § 2107 — the statute on which Rule 4(a) is based — contains no “extraordinary circumstances” exception, or any exception other than the two implemented in Rule 4(a)(5) and Rule 4(a)(6). Id. at 179. Hence, the court reasoned that “Congress does not intend for any exceptions, other than the ones already codified, to be used by parties to avoid strict compliance with appellate deadlines.” Id. Accordingly, the use of Rule 60(b) would contravene the clear rule in Bowles that courts cannot create exceptions to statutorily-based jurisdictional requirements. Id. The court cited several unpublished dispositions from other circuits in light of Bowles, as well as the D.C. Circuit’s published decision in the In re Sealed case, that reached the same conclusion. Id. at 180 (citing cases).
The only circuit to agree with the majority’s position today is the divided decision of the Sixth Circuit in Tanner v. Yukins, 776 F.3d 434 (6th Cir. 2015). Tanner reaffirmed the Sixth Circuit’s pre-Bowles decision in Lewis v. Alexander, in which the court held that Rule 60(b) could be used to restart the time to file an appeal where a party’s attorney had inadvertently untimely filed and did not realize this until after the thirty-day grace period in Rule 4(a)(5) had expired. See Tanner, 776 F.3d at 443-44; Lewis, 987 F.2d at 394-96. In Tanner, prison guards prevented a habeas petitioner from getting to the library to sign her notice of appeal during a prison lockdown. Tanner, 776 F.3d at 436. She signed it and sent it the next day, but the notice was already untimely. Of course, she failed to realize this during the thirty-day grace period provided by Rule 4(a)(5). Id. at 437. Tanner brought a 1983 suit against the prison guards for causing the untimely filing of her notice of appeal, and won. She then sought relief from the untimely filing under Rule 60(b), and the Sixth Circuit concluded that she had shown “extraordinary circumstances” because of the guards’ conduct. But the court distin *1113 guished Bowles along the same superficial lines that the majority does here, noting only that Bowles dealt with the exception under Rule 4(a)(6) and said nothing about Rule 60(b), and without discussing the nearly identical statutory basis for Rule 4(a)(5). Id. at 438-41. Ironically, the court might have shown its hand when it remarked that the petitioner in Tanner was “deserving of an equitable outcome.” Id. at 443. In short, Tanner offers no reasoned argument that would support the majority’s position here.
The majority’s reliance on our decision in Mackey v. Hoffman is equally unpersuasive. Mackey is, at best, irrelevant to the circumstances of this case, and at worst, a deeply flawed decision that conflicts with the Supreme Court’s decision in Bowles. Mackey held that “attorney abandonment” constitutes an extraordinary circumstance under Rule 60(b)(6) justifying relief from judgment in order to extend the time to file an appeal. Mackey, 682 F.3d at 1253-54. Mackey’s attorney stopped pursuing his case without informing him after Mack-ey’s parents stopped paying his legal fees, and as a result, Mackey missed the deadline to file a notice of appeal from the district court’s denial of his habeas petition. Id. at 1248-50.
In finding that Rule 60(b) could be used to extend the time to file an appeal due to the attorney’s misconduct, the panel relied on the Supreme Court’s decision in Maples v. Thomas, which held that attorney abandonment could constitute sufficient cause to lift a state procedural bar to federal habeas review. — U.S. -, 132 S.Ct. 912, 927, 181 L.Ed.2d 807 (2012). State procedural bars may be excused where a petitioner can demonstrate cause for the procedural default that was beyond his control, and actual prejudice from the violation of federal law. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In Maples, the petitioner’s attorneys changed jobs and stopped pursuing the case, without ever informing the petitioner, and as a result, the petitioner missed a state filing deadline. 132 S.Ct. at 919-20. The Supreme Court noted that generally, attorney negligence does not excuse a petitioner’s default, but that the situation was different where “an attorney abandons his client without notice, and thereby occasions the default.” Id. at 922. Accordingly, the Court found that the petitioner had demonstrated sufficient cause to excuse the state procedural bar. Note, however, that Maples dealt with an equitable exception to the judge-created, i.e., non-jurisdictional, procedural bar doctrine. Id. It had nothing to do with jurisdictional time limits, Bowles, or Rule 60(b), and therefore presents a rather uncertain basis on which to justify what the panel did in Mackey: bypass a jurisdictional time limit using Rule 60(b).
Mackey, unlike Maples, implicated the jurisdictional problem addressed in Bowles, and that we face here today. Like the Sixth Circuit and like the majority here, the Mackey panel dealt with Bowles in the same facile manner, dismissing Bowles because Bowles dealt with the notice of judgment problem addressed by Rule 4(a)(6), again without considering the identical statutory basis behind Rule 4(a)(5). Mackey, 682 F.3d at 1253. I am therefore deeply skeptical that Mackey was correctly decided in the wake of Bowles.[10]
*1114 Even assuming, however, that Mackey is correct, there was no attorney abandonment in Washington’s case, making Mack-ey inapplicable here. Even Washington does not argue that his attorney “abandoned” him by miscalculating a" filing deadline and filing the notice of appeal one business day late.[11] As I noted in footnote 5, supra, this kind of mistake is far from “extraordinary” — it is simple negligence that is, unfortunately, all too common. There is nothing exceptional about this case that warrants an extension of Mack-ey.
C
The majority concludes that Bowles has no bearing on this case because Bowles did not disturb the historical practice of using Rule 60(b) to extend the time to file an appeal. But the historical practice on which the majority relies is dubious at best; there is a slew of case law that weighs against the extension of this practice to the situation before us in this case. However, even if the majority is correct as to how Rule 60(b) was once used, Bowles makes crystal clear that such a practice is no longer an option. There is no difference between creating an “equitable exception” to the time limits in Rule 4(a) and using Rule 60(b) to “restore the opportunity to appeal,” Maj. Op. at 1092: both mechanisms extend the time to file an appeal past the time limit that has been set by Congress, time limits which the Supreme Court has concluded are jurisdictional. The majority’s attempt to suggest otherwise is utterly unconvincing. I am persuaded that Rule 60(b) simply does not provide relief from the untimely filing of a notice of appeal.
II
Lastly, I wish to remark on the argument made by the majority regarding an “error” made by the district court in this case in failing to promptly notify the circuit that Washington had filed a notice of appeal. At the time Washington filed his notice of appeal, Rule 3(d) of the FRAP required the district court to “promptly send a copy of the notice of appeal” to the circuit court. Fed. R. App. P. 3(d). However, Rule 3(d) did not specify a time within which the district court must act. The rule did not even identify from which point the district court’s “promptness” is to be measured — whether the notice must be “promptly” forwarded upon the district court’s receipt of it, or “promptly” upon occurrence of some other event. FRAP 22(b)(1), which has since been amended, required the district court to “send the certificate [of appealability] or statement [why a certificate should not issue] to the court of appeals with the notice of appeal and the file of the district court proceedings.” Fed. R. App. P. 22(b)(1) (1998). The district court clerk in this case waited until the district court had ruled on Washington’s certificate of appealability — a prerequisite to our jurisdiction — before sending the certificate of appealability, together with the notice of appeal and the district court record, to this court, as Rule 22(b) required.
The majority concludes that this was error, because the district court clerk did not “promptly” send the notice of appeal to the circuit as soon as the notice of appeal was filed, but rather waited until the certificate of appealability had issued. Moreover, the majority argues, this error preju *1115 diced Washington: if the district court clerk had sent the notice of appeal to the circuit as soon as it was filed, our clerk’s office would have issued an order to show cause earlier, and Washington’s attorney might have realized the appeal was late in time to request an extension of time to file an appeal within the thirty-day grace period provided by Rule 4(a)(5). Maj. Op. at 1100-01. In other words, Washington’s negligence — or that of his attorney — was all the district court’s fault, because the district court clerk “prevented]” Washington from being able to timely file. Maj. Op. at 1088, 1090, 1095, 1099, 1099-1100 n.10.
This is an extraordinary statement by the majority. I have no interest in opining on a version of the FRAP that no longer exists, but the majority’s argument on this issue is so strained that I am compelled to briefly address it. At the time, the district court was not required, as it is now, to issue or deny a certificate of appealability at the same time it issued its final order regarding the merits of the habeas petition. See Fed. R. App. P. 11(a). It was apparently common practice for our district courts to issue an order addressing the petition on the merits, and then separately address the certificate of appealability, sometimes weeks or months later. Under the majority’s new reading of FRAP 3, the district court clerk was required to forward the notice of appeal to the circuit court twice: first, when the notice of appeal was initially filed, in order to comply with Rule 3(d), and second, after the certificate pf appealability was issued, in order to comply with Rule 22(b)(1). This makes no sense. As the majority acknowledges, the notice of appeal and the certificate of ap-pealability, when forwarded together, give the circuit court clerk notice of the transfer of jurisdiction of the case. Maj. Op. at 1100; see Ortberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1992). But without the certificate of appealability, the circuit has no jurisdiction. What, then, would be the purpose of forwarding the notice of appeal before the certificate of appealability issues? To inform the circuit that jurisdiction may transfer in the future? The majority cites no relevant case law from any court in support of this novel reading of the rules. The one case the majority cites in support of its proposition is Yadav v. Charles Schwab & Co., 935 F.2d 540 (2d Cir. 1991), a non-habeas civil case, meaning that Rule 22(b) was not implicated there as it is here. Certainly I do not disagree with the holding of Yadav that when only Rule 3 is in play, Rule 3 requires the district court clerk to forward the notice of appeal to the circuit court sooner rather than later. But the issue here is how Rule 22(b)’s requirement of a certificate of appealability — including the certificate of appealability’s attendant effect upon our jurisdiction — informs the operation of Rule 3 in the specific context of habeas cases.
Although the rules may have been inart-fully drafted, an alternative, more logical reading of the rules — one the majority does not even consider — is that the rules required the district court clerk to “promptly” forward the notice of appeal once the certificate of appealability issued, not once the notice of appeal was filed. Such a reading harmonizes the two seemingly contradictory directions provided in the FRAP. Rule 22 is specific to the habe-as context, while Rule 3 applies generally to notices of appeal in all cases. Presumably, in non-habeas cases — in cases where no certificate of appealability is required— the district court would “promptly” forward the notice of appeal to the circuit court as soon as the notice was filed. But in the habeas context, Rule 22 appears to give more specific instructions — to forward the notice of appeal with the certificate of appealability — thus requiring the court clerk to wait until the certificate of appeal-ability actually issued. Once the certificate *1116 of appealability issued, the clerk could then “promptly” forward the notice of appeal together with the certificate of appeal-ability and the record to the circuit court, as Rule 22(b) required. That is exactly what the district court clerk did here, and I see no reason to accuse the district court of error in an underdeveloped argument based on a reading of the FRAP with no support in logic or case law.
Even assuming, however, that the district court clerk did err in its reading of the rules, Bowles tells us that this does not matter. In Bowles, the late filing really was the district court’s fault, as the district court gave the petitioner an extra three days past the permitted extension period, and the petitioner relied on this extension. The Supreme Court held that this was irrelevant, given the jurisdictional nature of the time limits at issue. Bowles, 551 U.S. at 207, 214, 127 S.Ct. 2360. The situation in this case is no different. If anything, it is less sympathetic. In Bowles, the defendant followed what the district court told him he should do. Here, counsel made his own mistake and might have been alerted to his error if the district court had forwarded the notice of appeal to this court and if we issued a prompt order to show cause within the thirty-day grace period.[12] Neither counsel’s error nor the timing of the' district court’s forwarding of the notice of appeal can avoid the time for filing an appeal.
Ill
In short, the majority has offered no reasoned explanation for its decision to ignore the Supreme Court’s dictate in Bowles, the text of Rule 60(b) and Rule 4(a), or the reasoning of our sister circuits. It has utterly failed to explain how a claim-processing rule like Rule 60(b) can be used to undermine a jurisdictional, statutory filing requirement promulgated by Congress. And it ignores the consequences of its decision today: that in allowing relief under Rule 60(b) from an untimely appeal, the court puts a hole right through the Rule 4(a) timing requirements, now giving parties up to a year to attempt to pursue an appeal. That cannot be correct. And while I am sympathetic to the petitioner’s particular plight in this case, I note that federal courts regularly and completely preclude review in federal habeas cases— even capital cases — where a would-be ha-beas petitioner fails to timely file within the one-year statute of limitations. See, e.g., Lawrence v. Florida, 549 U.S. 327, 336-37, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) (declining to apply equitable tolling to a habeas petition in a death penalty case where the petitioner’s attorney miscalculated the statute of limitations)[13]; Pace v. DiGuglielmo, 544 U.S. 408, 418-19, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (declining to apply equitable tolling to a petitioner sentenced to life without parole); Damren v. Florida, 776 F.3d 816, 821-22 (11th Cir. 2015) (per curiam) (declining to apply *1117 equitable tolling to a habeas petition in a capital case); Rouse v. Lee, 339 F.3d 238, 243 (4th Cir. 2003). I would affirm the judgment of the district court.[14] As I said at the outset, I take no pleasure in that judgment, but it is the judgment required by law.
I respectfully dissent.

. Section 2107(c) also provides as follows:
In addition, if the district court finds—
(1) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry, and
(2) that no party would be prejudiced,
the district court may, upon motion filed within 180 days after entry of the judgment or order or within 14 days after receipt of such notice,' whichever is earlier, reopen the time for appeal for a period of 14 days from the date of entry of the order reopening the time for appeal.
28 U.S.C. § 2107(c).

. Those rules provide, in relevant part:
(5) Motion for Extension of Time.
(A) The district court may extend the time to file a notice of appeal if:
(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and
(ii) regardless of whether its motion if filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause
(C) No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.
(6) Reopening the Time to File an Appeal. The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, bút only if all the following conditions are satisfied: '
(A) the court finds that the moving party did not receive notice finder Federal Rule of Civil Procedure 77(d) of the entry of the judgment or order sought to be appealed within 21 days after entry;
(B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77(d) of the entry, whichever is earlier; ....
Fed. R. App. P. 4(a)(5), (6).

. The majority notes that Rule 4(a)(4) tolls the time to appeal where a Rule 60(b) motion has been filed, and suggests that Rule 60(b) is an embarrassment to my theory. Maj. Op. at 1099 n.8. Where a Rule 60(b) motion is used properly, it seeks to substantively amend the judgment, thus rendering the original judgment un-final. In that case, there is no longer anything to appeal from until the amended judgment is entered. Rule 4(a)(4) simply recognizes this, and thus presents no conflict with Rule 4(a)(5) or § 2107. This is also why a Rule 60(b) motion may be filed up to a year after the entry of judgment without running afoul of the time to appeal. But as I noted above, Washington in this case was not actually seeking to alter or amend the judgment. He just wanted more time to file an appeal.

. The majority states that I am "implied[ly] asserting] that the Federal Rules of Appellate Procedure have a superior statutory foundation than that of the Federal Rules of Civil Procedure.” Maj. Op. at 1105 n.2. No. What I have said, and it bears repeating, is that the time limits in FRAP 4(a)(5) have a specific statutory basis, 28 U.S.C. § 2107, while Rule 60(b) has no such statutory corollary. The majority seems to suggest that because both the FRAP and the Rules of Civil Procedure were promulgated under the Rules Enabling Act, see 28 U.S.C. § 2072, the two rules have the same statutory basis, and therefore Rule 60(b) can be used to circumvent Rule 4(a). Maj. Op. at 1105 n.2. The problem that the majority refuses to acknowledge is that its proposed use of Rule 60(b) circumvents not only Rule 4(a)(5), but § 2107, a separate statute. No court has ever held that the Rules Enabling Act gives courts the power to' promulgate rules to overturn other acts of Congress and expand the jurisdictional limits that Congress has set. •

. The majority concludes that this case involves “extraordinary” circumstances and assures us that this is one of a "narrow band of cases,” that our power will be used “sparingly,” and that it is a "rare case[],” one of a "handful” of the thousands of cases decided each year. Maj. Op. 1091, 1094, 1097, 1101— 02. There is really nothing extraordinary about attorneys miscalculating filing deadlines — even by one day. It happens all the time. See, e.g., Wilburn v. Robinson, 480 F.3d 1140 (D.C. Cir. 2007); Pincay v. Andrews, 389 F.3d 853 (9th Cir. 2004) (en banc); Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003) (en banc) (death penalty case); Hallgren v. U.S. Dep’t of Energy, 331 F.3d 588 (8th Cir. 2003); Lattimore v. Dubois, 311 F.3d 46 (1st Cir. 2002); United States v. Marcello, 212 F.3d 1005 (7th Cir. 2000); Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552 (6th Cir. 2000). And there is no limiting principle if we allow this exception.
If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline. ... Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced.
United States v. Locke, 471 U.S. 84, 100-01, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985).

. A bit of historical background is helpful in understanding the context here. At the time Hill was decided in 1944, the Court of Appeals of the District of Columbia — which would indeed become what we know as the D.C. Circuit — was not yet considered one of the federal circuit courts of appeal. In the Evarts Act of 1891, Congress separated the trial and appellate functions for most of the federal courts in the United States, creating our present system of federal district courts and the circuit courts of appeal. See Act of Mar. 3, 1891, ch. 517, 26 Stat. 826.’ It did not adopt this change for the courts in the District of Columbia, however, until two years later. With the Act of February 9, 1893, Congress kept the Supreme Court of the District of Columbia as a trial court, and created a new, three-member Court of Appeals of the District of Columbia to exercise appellate jurisdiction over the trial court. Act of Feb. 9, 1893, ch. 74, § 7, 27 Stat. 434, 435-36. It did not become clear until 1933, however, that this trial court and the new three-judge Court of Appeals were even Article III courts, as opposed to Article I "legislative” courts. See O'Donoghue v. United States, 289 U.S. 516, 549, 551, 53 S.Ct. 740, 77 L.Ed. 1356 (1933). And it was not until 1948 — four years after Hill — that Congress designated D.C. as one of the eleven judicial circuits of the United States, and re-named the Court of Appeals for the District of Columbia the United States Court of Appeals for the District of Columbia Circuit. Act of June 25, 1948, ch. 646, §§ 41, 45, 62 Stat. 869, 870-71; see also Susan Low Bloch & Ruth Bader Ginsburg, Celebrating the 200th Anniversary of the Federal Courts of the District of Columbia, 90 Geo. L.J. 549, 559-61 (2002). See generally, John G. Roberts, Jr., What Makes the D.C. Circuit Differ *1110 ent? A Historical View, 92 Va. L. Rev. 375 (2006).

. The majority cites the Third Circuit's decision in Burkett v. Cunningham, 826 F.2d 1208, 1217 (3d Cir. 1987), abrogated on other grounds by Betterman v. Montana, - U.S. -, 136 S.Ct. 1609, 194 L.Ed.2d 723 (2016), for the proposition that "exceptional circumstances” may justify relief under Rule 60(b) despite failure to comply with the Rule 4(a) timing requirements. Maj. Op. at 1095-96. What the majority leaves out is that the "exceptional circumstances” to which the court referred is the fact that Burkett never received notice of the entry of the final order he was attempting to appeal from; the notice was sent to an incorrect address. Burkett, 826 F.2d at 1216-17. In other words, this is simply another lack-of-notice case. At the time, the exception in Rule 4(a)(6) specifically addressing lack-of-notice situations had not yet been added to Rule 4(a); hence, the Third Circuit was relying on the historical lack-of-notice exception discussed above.

. Dunn and Jacl<son were both capital habeas cases. Dunn’s attorney filed his notice of appeal four days late. Dunn, 302 F.3d at 492. Jackson's attorney filed an untimely Rule 59(e) motion, which meant that it was inoper *1111 ative to toll the filing period for a notice of appeal of the district court’s denial of his habeas petition. Jackson didn’t realize this until the Eleventh Circuit dismissed his initial appeal, at which point he sought relief in the district court under Rule 60(b) to restart the filing period. Jackson, 437 F.3d at 1292. Thus, we are not the only court .that has had to address this issue in this freighted context.

. The majority argues briefly that the Supreme Court’s decision in Browder v. Director, Department of Corrections, 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978), on which Bowles relied for the proposition that Rule 4(a) time limits are jurisdictional, see Bowles, 551 U.S. at 209-10, 127 S.Ct. 2360, supports its decision today. Maj. Op. at 1096. It does not. Browder reached the unremarkable conclusion that a post-judgment motion for a new evidentiary hearing in a habeas proceeding, which the Court construed as an untimely Rule 59 motion, could not be used to toll the time to file an appeal. 434 U.S. at 264-65, 271-72, 98 S.Ct. 556. The original judgment granting habeas was issued in October, and the district court agreed to hold the post-judgment evidentiary hearing in a December 8 order, but ultimately denied the state relief after holding the hearing in January, a decision from which the state then appealed. The Court found that the appeal was untimely because the untimely motion had not tolled the time to appeal. The concurrence, on which the majority relies, Maj. Op. at 1097, merely pointed out that if the state’s motion for the post-judgment evidentiary hearing were construed as a Rule 60(b) motion, the district court’s December 8 order could have been construed as granting Rule 60(b) relief setting aside the original October judgment, because the district court clearly intended to reopen the judgment by holding the evidentia-ry hearing. Browder, 434 U.S. at 272-73, 98 S.Ct. 556 (Blackmun, J., concurring). Had the Court instead construed the district court's order in such a way, the state’s appeal would then have been timely as an appeal from the reentry of judgment after the evidentiary hearing was held. Id. at 273, 98 S.Ct. 556. Nothing in this case suggests that the state could have moved under Rule 60(b) to vacate and reenter the judgment solely for the purpose of restarting the time to file an appeal, without seeking to alter the original judgment.

. The Seventh Circuit recently followed the Mackey decision in Ramirez v. United States, 799 F.3d 845, 854 (7th Cir. 2015), a similar attorney abandonment case. The reasoning in Ramirez is, in some ways, even more puzzling than that in Mackey. Ramirez likewise relies on a number of Supreme Court cases dealing with the procedural bar doctrine, as well as cases regarding AEDPA’s prohibition on successive habeas petitions, to justify using Rule *1114 60(b) to restart the time to file an appeal. Ramirez does not even mention Bowles.

. In fact, the panel in this case remanded the case to the district court after Mackey was decided. to determine whether Washington had suffered attorney abandonment. The district court concluded that he had not. Washington has not challenged this finding in the current en banc proceedings.

. The majority, however, has identified no statute or rule requiring this court to provide notice — in the form of an order to show cause why the appeal should not be dismissed — that an appeal is untimely. Even if the majority’s reading of FRAP 3 and 22 were correct, the district court’s timing in forwarding the notice of appeal did not deprive Washington of any notice to which he was entitled. Nothing in the district court's actions "prevented” Washington’s counsel from filing a timely notice of appeal.

. See Lawrence, 549 U.S. at 336-37, 127 S.Ct. 1079 ("Lawrence argues that his counsel’s mistake in miscalculating the limitations period entitles him to equitable tolling. If credited, this argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline. Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel.”)

. I note as well, that although the majority concludes the district court was wrong when it found that it did not have the power to use Rule 60(b) to reopen the time to file an appeal, rather than remanding to the district court to reconsider whether Rule 60(b) relief ís warranted in light of our new holding, the majority just concludes that it is. Thus we engage in a bit of self-help, expanding our own jurisdiction by concluding that the district court simply abused its discretion by not affording relief.